## Commonwealth *v.* Greene, Appellant.

Argued April 26, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

reargument refused January 24, 1972.

*Arnold E. Rubin,* with him *Mowatt, McErlean, Pinto, Theodore & Rubin,* for appellant.

*O. Warren Higgins,* Assistant District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, December 20, 1971:

Appellant and two co-defendants were charged with murder, voluntary manslaughter, involuntary manslaughter, robbery and conspiracy. Tried separately before a jury, appellant was found guilty of first degree murder and sentenced to life imprisonment. This appeal followed.

The most interesting contention presented on this appeal is whether the court below erred when it permitted a witness to be questioned outside the presence of the jury. During the course of the trial, defense counsel called one Earl Williams,—who was indicted for the same crimes,—to testify on appellant's behalf. Because of the pendency of identical charges against Williams, his counsel informed the court that his client had been advised to invoke his Fifth Amendment privilege against self-incrimination. Attempting to forestall any possible detriment to Williams and realizing the inference adverse to the Commonwealth's case which was likely to be drawn by the jury from Williams' refusal to testify, the court below permitted him to be questioned in the jury's absence. As expected, every question asked of this witness received a Fifth Amendment response. Earl Williams was eventually excused, the jury returned and no mention of this incident was made.

It is obvious from the record that one facet of defense counsel's trial strategy involved shifting criminal responsibility from appellant to Williams. To achieve this end, defense counsel ingeniously sought to question Williams, knowing well in advance that he would continually claim his Fifth Amendment privilege against self-incrimination. In this manner, unless there were careful cautionary instructions, the jury would possibly infer that Williams and not the appellant was the killer. Appellant contends the jury should

have been permitted to observe and hear Williams' repeated invocation of the Fifth Amendment.

In *Namet v. United States*, 373 U.S. 179 (1963), the Supreme Court was faced with the question whether a federal *prosecutor* could question accomplices likely to claim their Fifth Amendment privilege. Reviewing the case law on the subject, the Court concluded there was no reversible error for the principal reason that the prosecutor justifiably believed that these accomplices did not have a valid Fifth Amendment claim. Unlike *Namet*, the instant appeal involves *defense* questioning where the witness would have a valid Fifth Amendment claim. Without suggesting either proper procedures or curative devices to be employed in the future, the Supreme Court did note the Government's testimony should be preliminarily screened outside the presence of the jury. 373 U.S. at 190 n. 9. See also, *United States v. Maloney*, 262 F. 2d 535 (2d Cir. 1959).

A recent opinion by the Court of Appeals for the District of Columbia, provides the only analogous precedent. *Bowles v. United States*, 439 F. 2d 536 (D.C. Cir. 1970). In *Bowles*, the accused's defense, buttressed by the testimony of another witness, involved placing sole responsibility for a homicide on another. As in the instant appeal, Bowles attempted to question the other individual but the trial judge refused as he had ascertained that the witness would invoke his privilege against self-incrimination. A "missing person" instruction was refused and the incident was never brought to the jury's attention. Reviewing the principle that the jury may not draw any inference from a witness' exercise of his constitutional rights whether the inference be favorable to the prosecution *or the defense*, the court applied the corollary to this rule that a witness should not be placed on the stand for the purpose of having him exercise his privilege before the jury. We are in agreement with these

principles and we conclude that the court below properly refused to allow Williams to take the stand.

However, our inquiry does not terminate at this point. Viewing appellant's trial strategy to place responsibility on Williams, the jury might draw an adverse inference from appellant's failure to call Williams. Thus, while the court below properly refused to permit Williams' testimonial assertion of his constitutional right, the court, if requested, should have given "neutralizing instruction, one calculated to reduce the danger that the jury will in fact draw an inference from the absence of such a witness." 439 F. 2d at 542. In the instant appeal, there was no request and, hence, no error.

Appellant also contends: (1) trial counsel was ineffective; (2) the names of confidential informants were improperly withheld; and (3) the charge of the court below was erroneous. We have reviewed each of these arguments on the record facts and we are of the opinion that they are devoid of merit.

Judgment of sentence affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

A criminal defendant's right "to have compulsory process for obtaining witnesses in his favor" is made applicable to the states through the Fourteenth Amendment. *Washington v. Texas,* 388 U.S. 14, 87 S. Ct. 1920 (1967). This right was denied appellant when the trial court refused to permit his counsel to call Earl Williams as a witness, and I therefore dissent.

It is firmly established that the prosecutor in a criminal case may not call a witness who he has reason to believe will refuse to testify on the basis of his privilege against self-incrimination. See, e.g., *Fletcher v. United States,* 332 F. 2d 724 (D.C. Cir. 1964); *United States v. Tucker,* 267 F. 2d 212 (3rd Cir. 1959); *United States v. Maloney,* 262 F. 2d 535 (2d Cir. 1959);

*People v. Pollock,* 21 N.Y. 2d 206, 234 N.E. 2d 223 (1967); *State v. Fournier,* 91 N.J. Super. 477, 221 A. 2d 225 (1966); cf. *Namet v. United States,* 373 U.S. 179, 83 S. Ct. 1151 (1963). From this line of decisions the majority reasons as follows: If the prosecution cannot call a witness likely to claim his privilege against self-incrimination, the defense should likewise be barred from calling a witness likely to invoke the Fifth Amendment.

This argument achieves an empty symmetry without significance. As ably put by Chief Judge BAZELON in *Bowles v. United States,* 439 F. 2d 536, 543 (D.C. Cir. 1970) (dissenting opinion): "The differing situations of the defense and prosecution, which we have recognized in other contexts . . ., is central to an understanding of the appellant's contention. *Cf.* Goldstein, The State and the Accused: Balance of Advantage in Criminal Procedure, 69 Yale L.J. 1149 (1960). The position of a defendant asserting his Sixth Amendment right to bring witnesses before the jury is not analogous to that of a prosecutor attempting to insinuate that a defendant is guilty because his confederates refuse to answer incriminating questions. . . . This tactic on the prosecutor's part is equivalent to an outright denial of the defendant's Fifth Amendment right to remain silent, and it is unconstitutional to employ a defendant's silence as an element of the proof needed to convict beyond a reasonable doubt. Fontaine v. California, 390 U.S. 593, 88 S. Ct. 1229, 20 L. Ed. 2d 154 (1968); Griffin v. California, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). By contrast, when the accused suggests that another person is the culpable party, the other's refusal to testify is merely being used as corroboration." Id. at 545 n. 11 (citations omitted).

Putting aside the hobgoblin of symmetry and analyzing the instant case in terms of the Sixth rather than the Fifth Amendment, I believe that appellant's right

to compulsory process has been violated. In so concluding, I am much persuaded by the analogous case of *United States v. Seeger,* 180 F. Supp. 467 (S.D. N.Y. 1960). The defendant in that case had been charged with wilfull refusal to answer pertinent questions put to him in the course of a Congressional investigation. His counsel submitted an affidavit setting forth his intention to question the Congressional Committee Chairman concerning the subject matter of the investigation, the pertinency of the questions asked of defendant, the authority of the Committee to conduct the investigation, and the legislative purpose of the hearing. An appropriate subpoena was served upon the Chairman, and the Government moved to quash the subpoena.

In refusing the Government's motion, Judge WEIN-FELD reasoned as follows: "Under the Sixth Amendment to the Constitution a defendant accused of crime is guaranteed the right to compel the attendance of witnesses. Who these witnesses shall be is a matter for the defendant and his counsel to decide. It does not rest with the prosecution or the person under subpoena. The defendant may not be deprived of the right to summon to his aid witnesses who it is believed may offer proof to negate the Government's evidence or to support the defense. . . .

"The materiality of a witness' proffered testimony must rest with the trial judge *after the witness has been sworn.* If questions are objected to, a ruling as to relevancy or materiality can be made within the framework of the charges contained in the indictment and against the background of the evidence in the case. To issue such a ruling *in advance of trial* and to hold that the witness' testimony is not material and hence the subpoena should be vacated, would deprive the defendant of his constitutional right to compulsory process under the Sixth Amendment. . . ." Id. at 468 (emphasis added). Just as the possible immateriality

of a witness' testimony should not be anticipated in advance of trial, I do not believe that a court should attempt to anticipate that a witness will in fact refuse to answer all questions put to him on the ground of self-incrimination.

Finally, I am not persuaded that permitting appellant to call Earl Williams as a witness would have put the Commonwealth at any disadvantage. As noted by Chief Judge BAZELON in *Bowles v. United States,* supra: "There is some danger that a defendant might misuse the inference from another's failure to testify. This potential abuse is mitigated, however, by jurors' natural skepticism of any 'buck passing,' and by the prosecutor's right to demonstrate to the jury that the person accused by the defendant is someone on whom he has prevailed (through friendship, or by threats of injury) to come to court and then refuse to testify." 439 F. 2d at 545 n. 13.

Mr. Justice O'BRIEN joins in this dissent.