406 A.2d 1039

COMMONWEALTH of Pennsylvania

v.

Florencio ROLON, Appellant.

Supreme Court of Pennsylvania.

Argued April 17, 1979.

Oct. 24, 1979.

574

Lawrence S. Rosenwald, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Paul S. Diamond, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Both article I, § 9 of our Constitution and the sixth amendment to the Constitution of the United States guarantee appellant Florencio Rolon "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary . . . ." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).[1] We agree with appellant that the court of common pleas deprived appellant of his right of compulsory process by accepting the unsupported claim of privilege against self-incrimination of appellant's witness, Orlando Rodriguez. Accordingly, we reverse judgment of sentence and grant appellant a new trial.[2]

Police charged appellant with killing Edward Muldor. At trial, appellant called Felix Ayala to confirm appellant's claim that he was merely a witness to the killing, and not a perpetrator. Just as Ayala began to testify on appellant's behalf, the Commonwealth interrupted Ayala's testimony, contending that Ayala may have been involved in the crime. Acting on the Commonwealth's assertion, the trial court delayed trial and summoned a public defender to assist

1. Article I, § 9 of the Constitution of Pennsylvania provides that "[i]n all criminal prosecutions the accused hath a right . . . to have compulsory process for obtaining witnesses in his favor . . . ." The sixth amendment contains identical language.

2. This opinion was reassigned to this writer on September 21, 1979 for the purpose of preparing an opinion expressing the views of a majority of this Court.

We reject appellant's contention that the evidence is insufficient to sustain a verdict of murder of the third degree. Eyewitness testimony and appellant's statement directly linked appellant to the killing.

In view of our disposition, we have no occasion to address appellant's claims that (1) appellant's inculpatory statement to police should have been suppressed, (2) appellant should have been permitted to question his brother, Manuel Rolon, regarding both Manuel's statement to police providing probable cause to arrest appellant and police intimidation, (3) appellant's criminal record should not have been used at the suppression hearing, (4) appellant should have been permitted to question witnesses concerning community feelings toward "gang wars," and (5) the trial court improperly charged the jury.

Ayala in determining whether to assert the privilege of self-incrimination.

The trial court's concern for the rights of appellant's witnesses was not limited to Ayala. The court also appointed counsel to represent Orlando Rodriguez, another of appellant's witnesses who had not yet testified. It did so only on the basis of its unspecified belief that the "same problem may exist." [3] Appointed counsel consulted with both witnesses and announced to the court that the witnesses intended to claim the privilege. The court accepted each witness's claim without affording appellant an opportunity, timely-requested, to establish even his proposed line of questioning.

Court then recessed for the day "to give [defense counsel] an opportunity to reassess [his] position. . . ." [4] Later that day, Ayala and Rodriguez

> "were arrested in the courtroom. . . . They went to the Police Administration Building and both gave full statements with regard to this after having waived their Fifth Amendment rights . . . ." [5]

Even though the jury was not charged until the next day, there is no indication on the record that the Commonwealth informed either the court or defense counsel that statements had been obtained. Likewise, there is on the record no indication that the content of either witness's statement substantiated the claim of privilege or implicated appellant. At no time during the more than three and one-half years since trial has either witness been prosecuted.

The day after both defense witnesses claimed the privilege, the court charged the jury. The jury found appellant guilty of murder of the third degree. Written post-verdict motions were denied and appellant was sentenced. This appeal followed.

3. Record at 6.41.

4. Record at 6.83.

5. Stipulation, Transcript of Motion for a New Trial and/or in Arrest of Judgment at 4.

■ It is true that "for the court to properly overrule the claim of privilege, it must be *perfectly clear* from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answers demanded *cannot possibly* have such tendency." *Commonwealth v. Carrera*, 424 Pa. 551, 553–554, 227 A.2d 627, 629 (1967). Accord, *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). But it cannot be concluded here, where Rodriguez never took the witness stand, that the trial court's acceptance of Rodriguez's claim was justified. At no time did the trial court permit appellant to establish the line of questions he would have put to Rodriguez. Instead, the court merely acceded to Rodriguez's desire not to answer any questions. Compare *Commonwealth v. Greene*, 445 Pa. 228, 230, 285 A.2d 865, 866 (1971) (trial court permitted defendant to question defense witness claiming privilege). And there is no evidence in the seven volumes of trial transcript which links Rodriguez to the crime. Even the Commonwealth's eyewitness, Manuel Rolon, named the group of persons who attacked the victim, but made no mention of Rodriguez's presence at the scene.

In *Commonwealth v. Carrera, supra*, this Court made clear that:

"[w]hen an individual . . . is called to testify . . . in a judicial proceeding, he or she is not exonerated from answering questions merely upon the declaration that in so doing it would be self-incriminating. It is always for the court to judge if the silence is justified, and an illusory claim should be rejected."

By accepting Rodriguez's mere assertion of the privilege on a record both lacking any indication that appellant's line of questions would have required the privilege to be invoked and containing no evidence which links Rodriguez to the crime, the trial court erred under *Carrera*. Appellant must therefore be awarded a new trial.[6]

Judgment of sentence reversed and new trial granted.

6. Because we hold under *Carrera* that the court erred in accepting the claim of privilege of defense witness Rodriguez, we express no

MANDERINO, J., did not participate in the consideration or decision of this case.

NIX, J., filed a dissenting opinion.

NIX, Justice, dissenting.

In my judgment the trial court had sufficient basis to accept the invocation by both Felix Ayala and Orlando Rodriguez of their privilege against self-incrimination as guaranteed by Article 1, Section 9 of the Pennsylvania Constitution and by the Fifth Amendment to the Federal Constitution. Accordingly, I disagree with the majority's conclusion that there was a violation of appellant's right to compulsory process, a right guaranteed by Article 1, Section 9 of the State Constitution and by the Sixth Amendment to the Federal Constitution. I dissent and would affirm the judgment of sentence.

During the presentation of the defense, appellant's counsel called Felix Ayala to testify. After a few preliminary questions by defense counsel, the prosecutor requested a sidebar conference during which he advised the court and defense counsel that there was a substantial likelihood that Mr. Ayala was one of the unapprehended co-defendant's sought in connection with the victim's death. After this

view on the following issues: (1) whether, under *Carrera*, the court correctly accepted defense witness Ayala's claim of privilege; (2) whether the Commonwealth would be obliged under principles embodied in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Washington v. Texas, supra*, to report either to the court or defense counsel that Ayala and Rodriguez gave police statements exculpating appellant or casting doubt on the witnesses' claims of self-incrimination; (3) whether, if the statements were exculpatory, as would appear to be the case in light of the Commonwealth's failure to this day to charge either witness with any offense, there could be a basis for the claims of privilege; and (4) whether, assuming each witness inculpated himself in giving the statement, the trial court should have considered the undisputed fact that, in giving the statement, each witness waived his privilege against self-incrimination (see text accompanying *supra* note 5).

We note that appellant's trial began before the effective date of 42 Pa.C.S. § 5947(c) ("district attorney may request an immunity order" in specified circumstances). See generally Westen, *The Compulsory Process Clause,* 73 Mich.L.Rev. 73, 166–70 (1974) (right of compulsory process includes right to obtain immunity for witnesses).

discussion, the court, on its own motion and over defense objections, advised Mr. Ayala of his legal rights in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), outside the presence of the jury. Upon the suggestion by the prosecutor, the court provided Mr. Ayala with an attorney. The jury was then removed to the hall outside the courtroom and an attorney—Michael Levy— was located to represent Mr. Ayala as well as Orlando Rodriguez, another defense witness who also was wanted by the police in connection with the attack upon the victim.

After reviewing the case with Messrs. Ayala and Rodriguez, their attorney informed the court and counsel in chambers as follows:

MR. LEVY: Yes. That, in my opinion, there was a substantial danger of self incrimination with each of these men. Based upon that, I have advised both of them that they should exercise their privilege under the Fifth Amendment of the United States Constitution and under article 1 section 9 of the Pennsylvania Constitution, and it is my understanding at this time that each of these witnesses will follow my advice and will decline to answer questions on the basis of those constitutional rights that they have.

Following this discussion in chambers, the jury was removed and Messrs. Rodriguez and Ayala then took the stand and both said that they would invoke their rights against self-incrimination and refused to testify concerning the incident.

The court accepted the witnesses' claims of privilege and excused them from testifying. The court then granted a defense request for a continuance until the following day. The jurors were returned to the courtroom and cautioned to avoid any references to the case which might appear in the news media. Messrs. Ayala and Rodriguez were subsequently arrested in the courtroom and taken to the Police Administration Building where they waived their constitutional rights and gave statements. Both were released and, apparently, neither was subsequently charged with any crime arising out of this incident.

Although appellant recognizes the authority of *Commonwealth v. DiGiacomo*, 463 Pa. 449, 345 A.2d 605 (1975), he seeks to avoid its reasoning by distinguishing it on its facts. In *DiGiacomo*, this Court held that:

> The mere advising of one individual of his rights where there is a justifiable occasion for doing so, does not in turn infringe upon the constitutional rights of another even though the election to exercise those rights may deprive the other of a possible advantage in his defense. Here, there was a proper occasion for advising . . . of the possible consequences of his testimony and thus the fact that he subsequently elected to invoke his privilege if called as a witness was not an impermissible infringement upon appellant's constitutional rights. *Id.*, 463 Pa. at 455, 345 A.2d at 607.

It was proper for the court on its own motion to advise the two witnesses of their constitutional rights. "[I]t is the court's function to advise a witness of his rights against self-incrimination when he feels the witness is about to give such testimony." *Commonwealth v. Jennings*, 225 Pa.Super. 489, 493, 311 A.2d 720, 722 (1973). *Accord, Schwinger Appeal*, 181 Pa.Super. 532, 539, 124 A.2d 133, 137 (1956) ("the judge *ought* to advise the witness of his privilege," emphasis added, *quoting Ralph v. Brown* 3 Watts & Serg. 395, 400 (1842). Cf., *United States v. Morrison*, 535 F.2d 223, 228 (3d Cir. 1976) ("[a]lthough as a general rule there is no duty to advise a *witness* in court or at a grand jury proceeding of his right not to incriminate himself, . . . it is entirely proper for the court in its discretion to issue such warnings"); *United States ex rel. Robinson v. Zelker*, 468 F.2d 159 (2d Cir. 1972), *cert. denied*, 411 U.S. 939, 93 S.Ct. 1892, 36 L.Ed.2d 401 (it was proper for trial judge to warn prospective defense witnesses, who were arrested while occupying the automobile in which defendant had fled from the scene of the crime, that they should engage an attorney, that their testimony could be used against them, and that they could be charged with being accessories, despite defendant's claim that the witnesses were thereby intimidated). This case is

similar to *DiGiacomo* in that "the occasion for the admonition was obvious and its nature was not that of a threat." 463 Pa. at 455, 345 A.2d at 607.[1]

It was not inappropriate for the prosecutor to suggest, and the court agree, that an attorney should be appointed for the two witnesses. Where it was clear that the witnesses had probably participated in the attack upon the victim, there was nothing improper in suggesting the need for or the providing of legal assistance to the witnesses as a means of insuring that they understood the nature of their constitutional rights and the consequences of a waiver of those. rights.

Appellant's second argument is that the court should have held a hearing in which to test the validity of the witnesses' claims of privilege. The standard by which the validity of a claimed fifth amendment privilege is to be measured is set forth in *Commonwealth v. Carrera*, 424 Pa. 551, 553–54, 227 A.2d 627, 629 (1967), where the Court stated:

> When [a witness is called to testify], he or she is not exonerated from answering questions merely upon the declaration that in so doing it would be self-incriminating. It is always for the court to judge if the silence is justified, and an illusory claim should be rejected. However, for the court to properly overrule the claim of privilege, it must be *perfectly clear* from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answer demanded *cannot possibly* have such tendency. (Emphasis in the original, citations omitted).

In determining whether a claim of privilege is proper, the trial judge should be guided as much by his personal perception of the peculiarities of the case as by the facts actually in evidence. *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). We believe that the trial

1. Appellant does not suggest that the witnesses were approached in an intimidating manner; he only objects that they were advised *at all* concerning their rights. *Compare Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *Commonwealth v. Jennings*, 225 Pa.Super. 489, 311 A.2d 720 (1973).

judge had sufficient information before him to intelligently rule upon the claims of privilege without the necessity of further interrogation of the prospective witnesses by the court. Here a prosecution witness—Manuel Rolon, appellant's brother—had previously testified that a person he knew only as "Felix" had participated in the attack upon the victim and had earlier attended the same party as his brother. When Mr. Ayala testified that his first name was Felix and that he had been at a party with appellant the night of the attack, it was proper for the trial judge to conclude that Mr. Ayala was the same person implicated in Manuel's testimony.

Faced with this situation, the trial judge wisely halted the trial with a view towards protecting the constitutional rights of Messrs. Ayala and Rodriguez. Although at the time it appointed Mr. Levy to represent Ayala and Rodriguez the court was acting under the representation that the dilemma confronting Mr. Ayala was also facing Mr. Rodriguez, this representation was born out both by Mr. Levy's statement to the court that Mr. Rodriguez faced a substantial likelihood of self-incrimination if he testified, and by Mr. Rodriguez's subsequent testimony that he would invoke his privilege against self-incrimination. The trial court is in an awkward position in such a situation. It is forbidden by the state and federal constitutions to inquire too deeply into the basis for the witnesses' invocation of the privilege for fear that such an inquiry would subvert the very protection sought to be provided. That is, an in-depth inquiry into the basis for the privilege might result in opening the door and thereby waiving the privilege. *U. S. v. Washington*, 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977); *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325, cert. den., 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589 (1971). On the other hand, the court is charged with the responsibility of making sure that the privilege is invoked in proper instances. In the situation confronting the trial judge in the present case, I cannot say that it was *"perfectly clear* from a careful consideration of all the circumstances, that the witness [was] mistaken in the

apprehension of self-incrimination and the answers demanded *cannot possibly* have such tendency." *Commonwealth v. Carrera, supra.*

The Opinion of the Court puts great emphasis on the fact that, although Messrs. Ayala and Rodriguez were arrested, apparently neither has subsequently been formally charged or tried in connection with this incident. This fact is not controlling. Many factors aside from an individual's complicity in a criminal act determine whether prosecution will be pursued. "It is sufficient if the person questioned has reasonable cause to apprehend such danger." *Commonwealth v. Carrera,* 424 Pa. at 553, 227 A.2d at 629. A fact which is of much greater significance, and ignored by the majority, is that counsel after conferring with his clients concurred in the view that their proposed testimony tended to incriminate them. Where a court has been advised by the prosecution that a proposed defense witness may be about to offer testimony that would tend to incriminate the witness, and the court supplies the witness with counsel, I do not believe it can be said that the court improperly accepts the invocation of the privilege where counsel confirms the legitimacy of the invocation of the privilege.

Appellant also contends that his rights to have compulsory process to obtain witnesses in his favor were violated by the court's acceptance of the witnesses' claims of privilege. Appellant's sole citation in support of this proposition is the dissent of Mr. Justice Roberts in *Commonwealth v. Greene,* 445 Pa. 228, 232–35, 285 A.2d 865 (1971). The starting point of our analysis is *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) which held the compulsory process clause to be incorporated into the fourteenth amendment's due process clause and applicable to the states. Specifically, the Court struck down two Texas statutes that prohibited participants in a crime from testifying on behalf of a co-participant. In interpreting the compulsory process clause, the Court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the

right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

\*　　\*　　\*　　\*　　\*　　\*

. . . We hold that the petitioner in this case was denied his right to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense. The Framers of the Constitution did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use. 388 U.S. at 19, 23, 87 S.Ct. at 1923, 1925 (footnote omitted).

The Court was careful to limit its holding, however, by stating that "[n]othing in this opinion should be construed as disapproving testimonial privileges, such as the privilege against self-incrimination . . . which are based on entirely different considerations . . . ." *Id.*, 23 at n.21, 87 S.Ct. at 1925.[2] Thus, it cannot be said that the Court has expressed a preference for compulsory process as an aid in the truth-finding process of the jury, over the individual witness' right to invoke the privilege against self-incrimination. Accordingly, appellant's rights to compulsory process were not violated by the proper invocation of the testimonial privilege against self-incrimination by the two witnesses.

---

**2.** *Accord, Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972) wherein rejecting idea that newspersons are privileged from compelled disclosure of information in criminal cases, the court stated that " 'the public . . . has a right to every man's evidence', *except for those persons protected by a constitutional, common-law, or statutory privilege*." (emphasis added).