439 A.2d 151

**COMMONWEALTH of Pennsylvania,**

v.

**Joseph F. CAREY, Appellant.**

Superior Court of Pennsylvania.

Argued June 11, 1979.

Filed Dec. 18, 1981.

Petition for Allowance of Appeal Denied June 1, 1982.

360

362

Robert F. Simone, Philadelphia, for appellant.

Michael Coll, Assistant District Attorney, Media, for Commonwealth, appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

STRANAHAN, Judge:

Defendant, Joseph Carey, has been convicted of criminal solicitation.[1] The evidence offered by the Commonwealth would indicate that the defendant solicited James Parsells, Owen Gallagher and David Eagan to set fire to Ernesto's Little Italian Market in Clifton Heights, Delaware County, Pennsylvania.

During the trial, David Eagan testified that he attended meetings with James Parsells and Joseph Carey at which time the arson of Ernesto's Little Italian Market was discussed and the defendant eventually paid to Eagan, who subsequently split the money with Parsells and Gallagher, the sum of $5,000.00 to commit the arson of the business in Delaware County.

All of the conversations among the defendant, Parsells and Eagan took place in Philadelphia. The first two conversations were at a downtown restaurant and the final conversation at one of the Philadelphia hotels.

As a result of these conversations and the final payment of money to Parsells, Eagan and Gallagher, the three men went to the market in Clifton Heights and entered the premises with a key that had been provided to them for that purpose. The key was provided by defendant giving it to Parsells who, in turn, gave the key to Eagan. The three men took with them a quantity of gasoline, together with various incendiary devices to be used in setting a fire in the building occupied by the business. Among the incendiary devices were timers, the heating elements of toasters, various wiring and other paraphernalia.

* Judge JOHN Q. STRANAHAN of the Court of Common Pleas of Mercer County, Pennsylvania, is sitting by designation.
 Judge LEONARD SUGERMAN of the Court of Common Pleas of Chester County, Pennsylvania, is sitting by designation.

1. 18 Pa.C.S.A. § 902

While the three men were in the building, people in the vicinity reported the occurrence to the police who arrived at the scene very quickly and observed the three men in the building. The police then advised the three men in the building that the premises were surrounded and that the occupants should give themselves up. Prior to surrendering, Parsells, who was in charge of setting the incendiary devices, triggered one of the devices and an explosion occurred. The three men were taken into custody by the police and subsequently were convicted of the arson.

The occurrence of the arson was October 24, 1976 and on October 13, 1977, defendant was arrested and charged with a multitude of crimes, which included theft by deception, arson, criminal conspiracy, criminal solicitation, criminal attempt to commit arson, incendiary devices and recklessly endangering other persons.

At the time of the preliminary hearing, the magistrate dismissed the charges of theft by deception and arson but bound the defendant over on the other charges.

Defendant was brought to trial and at the time of the trial the court dismissed all the charges against the defendant except criminal solicitation which was submitted to the jury and resulted in a conviction.

The principal witness for the Commonwealth was David Eagan. At the time of his testimony, Eagan was in the Federal Witness Protection Program and was under the protection of the United States Marshall's office.

Prior to the arson, Eagan had been involved in a post office robbery in Atlantic City. As a result of the robbery and as a result of Eagan later being convicted of the arson involved in this case, Eagan agreed to cooperate with federal authorities and testify against Carey in this case. He was a paid witness who was given a monthly stipend by the federal government and was maintained by the government as a protected witness.

Delaware County did not provide any funds but when Eagan was sentenced for arson, he received from Delaware

County a concurrent sentence with the federal sentence for the Atlantic City robbery.

The defendant argues his post trial motion for arrest of judgment by raising a number of issues, none of which have merit.

## I. JURISDICTION

The defendant has raised the issue that the case should not have been tried in Delaware County because the solicitation took place in Philadelphia County and, therefore, Delaware County lacked jurisdiction.

 We disagree with the defendant's position for a number of reasons. Our analysis of the crime of criminal solicitation indicates that criminal solicitation is an offer to enter into a conspiracy.[2] The crime itself is closely related to the crime of conspiracy. When the solicitation is accepted, as it was in this case according to the Commonwealth's testimony, then it becomes a continuing crime and as such, the prosecution may be brought in any county in which the criminal activity for which the solicitation was made took place. It is obvious that the authors of the Crimes Code considered criminal solicitation to be a continuing crime because 902(b)[3] provides a method of renunciation of the solicitation and permits a defendant who has solicited another person to commit a crime, to do various things, which in essence, amount to a renunciation. Such being the case, it is obvious that, like the crime of conspiracy, the crime of solicitation once it is consummated and becomes a conspiracy continues until the solicitation is either terminated by a renunciation or by other means, or the act itself is committed.

In section 903(a)(2)[4] criminal conspiracy includes an agreement to aid in an attempt or solicitation to commit a

2. Model Penal Code, Drafts 8, 9, and 10, sec. 5.02, solicitation.

3. 18 Pa.C.S. § 902(b).

4. 18 Pa.C.S. § 903(a)(2).

crime. The two sections are interrelated since the crimes are similar in nature.

In *Commonwealth v. Rogers,* 187 Pa.Super. 471 at 483, 144 A.2d 662 (1958) the court states: "It is a well established theory of law that, where one puts in force an agency for the commission of crime, he, in legal contemplation, accompanies the same to the point where it becomes effectual. . . ." It's logical that even though the original solicitation may have taken place in Philadelphia County, the ultimate act was to be performed in Delaware County and that county should have jurisdiction to try the defendant. It also follows as a matter of simple logic that where the defendant is charged with a substantial number of crimes, all of which would be triable in Delaware County, that this offense of solicitation, which is a part of the overall criminal plan, should also be tried in Delaware County. Otherwise, it would involve a second trial and would merely prolong the outcome of the charges against the defendant. Trying the defendant in Delaware County in no way prejudiced his case.

From all this, we conclude that the Court of Common Pleas of Delaware County had jurisdiction or venue to try this case and there was no requirement for this case to be severed from the other cases and tried separately.

## II. SUFFICIENCY OF EVIDENCE

The defendant further argues that there is insufficient evidence to sustain the conviction of criminal solicitation. This argument has no merit since a review of the testimony of David Eagan indicates that his testimony alone is sufficient to support the verdict in this case.

Next, the defendant raises issues in his post trial motion for a new trial.

## III. ERRORS OF EVIDENCE

The defendant contends that improper and prejudicial evidence admitted by the Court entitles him to a new trial.

During the course of the testimony by the witness Eagan, he indicated that Parsells told him the defendant had stated to him that he, the defendant, had a few "torch jobs" for Parsells to perform. Included in the jobs was the matter that led to the trial of this case. This testimony was prejudicial to the defendant in that it indicated other criminal activity in which the defendant was engaged. However, the record indicates that counsel, for the defendant, after this testimony had been offered, stated to the court: "I move for a mistrial or this witness to be admonished for the third time. He has been in court enough times to know what he is supposed to say." In response to that, the court admonished the witness advising him to confine himself to the issue in this case. With that, the case continued. When the attorney for the defendant requests the court to either declare a mistrial or admonish the witness and the court admonishes the witness, we fail to believe that defense counsel can now complain that the court did not comply with his request.

A second incident occurred, again during the testimony of Eagan, to the effect that Eagan in cooperation with federal authorities, tried to set up the defendant by making telephone calls to him in May 1977 which was prior to the defendant's arrest. These calls indicated to the defendant that Eagan believed Parcells was going to make a statement to Delaware County authorities and that Al and Cliff Williams were going to testify before the Grand Jury in New Jersey. The entire line of testimony was not clearly developed on the record and it is difficult for this court to understand what the purpose of the inquiry was. However, the court ultimately sustained defendant's objection and ordered the jury to disregard the line of questioning. The questioning did not indicate any admission by the defendant that he was involved in the arson or its solicitation so we do not believe the defendant was prejudiced to the extent that a new trial should be granted.

The fact the testimony showed that Al and Cliff Williams, two convicted criminals, were friends of the defendant might be considered inflammatory and prejudicial were it

not for the fact that the defendant by his cross-examination of Eagan endeavored to show that the defendant Carey was a part of a fund raising scheme to help raise money for Al and Cliff Williams in order to relieve their financial problems. This testimony indicated the relationship between the defendant and Al and Cliff Williams.

## IV. CLOSING STATEMENT BY DISTRICT ATTORNEY

■ The defendant also contends that during the course of the closing argument the prosecutor made prejudicial remarks. The first remark concerns reference to the fact that the witness Eagan was under the protection of the United States Marshall. We fail to see how this remark, which is the result of testimony that came out during the case concerning the status of Eagan, prejudices the defendant in any manner. The evidence indicates that Eagan was involved in a post office robbery in Atlantic City, and as a result of this robbery, he entered into a bargain with the federal authorities to testify in return for receiving a lighter sentence. In order to protect him, he was afforded certain security and was paid by the government in order that he could live during the period of time that he was to be used. He was a paid witness. While all of this bargain was the result of the Atlantic City robbery, the Commonwealth of Pennsylvania was permitted to use Eagan during the trial of this case because he possessed relevant information. All of this was explored in considerable detail during the trial of the case and certainly was relevant testimony for the jury to have in passing on the credibility of Eagan. Based on this testimony, the jury could well have reached the conclusion that Eagan was an incredible witness but his status as an informant certainly was a factor that should have been considered by the jury and we believe was a proper subject for the District Attorney to comment in his closing argument.

■ In his closing argument, the District Attorney said: "And if David Eagan is a professional criminal, what is the person who employs David Eagan to carry out his ends?" The defendant objected and moved for a mistrial. We do

not believe this was an improper argument based on the record in this case. Perhaps the question was intended to be rhetorical. The Commonwealth's contention was that the defendant hired and paid Eagan and the others to commit this crime and, therefore all of the participants in the arson resulting from the solicitation were performing their services for money and were professionals. The Commonwealth further contends that the defendant was hired to set up the arson by an unidentified person which would make him a professional.

■ Finally, the defendant objects to the District Attorney's argument which appears on the record as follows:

Mr. Coll: The question is, ladies and gentlemen, is the Commonwealth ultimately powerless to present evidence against such a person, who designs and pays for such a criminal act? And, you are equally at liberty to express your willingness to have a person who almost never gets caught in a crime like this to be convicted of it.

Mr. Simone: Your Honor, I object to the statement as being unfair.

The Court: Just be guided solely by the evidence Mr. District Attorney.

We do not believe this argument is improper. Since there was no motion for a mistrial or to strike the testimony and the court cautioned the District Attorney to be guided by the evidence, we do not believe there is any error.

## V. ALLEGED COURT ERROR

Next, the defendant contends that the trial court committed error in commenting on the defendant's failure to take the stand and his failure to call the witnesses and explain the prosecutor's evidence. Our examination of the record does not bear that out. The District Attorney, in his closing argument, endeavors to rebut testimony elicited on cross-examination to the effect that the $5,000.00 that Eagan contends he received as payment for the arson, was in reality, money contributed to Al and Cliff Williams under a scheme to raise money for them because they were in jail. This

theory had been injected into the case by the defendant on cross-examination. The District Attorney, in his closing argument, points out the lack of logic in the events that happened as far as supporting that element of the cross-examination. The District Attorney indicates that it would be difficult to believe that $5,000.00 would be given to Eagan, which was intended to be used by two prisoners and if Eagan never accounted for the money, it would be obvious that somebody would contact him in regard to it. This portion of the argument is merely an effort by the District Attorney to demonstrate to the jury how illogical the cross-examination by defense counsel on this matter was.

Probably the most serious problem raised by the defendant comes from the continuing statement by the District Attorney in his closing:

So what was the money for? If someone had taken $5,000.00 of your money that you had collected for some purpose, wouldn't you complain to somebody? *Where does this come from, this explanation* —————? (Emphasis supplied)

Mr. Simone: Excuse me, Your Honor, I hate to object. The failure of the defendant to make a complaint, I object to that statement. It is a violation of his Fifth Amendment rights.

The Court: Make no reference whatever to that, Mr. District Attorney.

The Assistant District Attorney then continued to make the same argument and defense counsel stated: "I am making an objection to the comment about the defendant offering no evidence." The Court then instructed the jury that it was to draw no unfavorable inference against the defendant because he didn't testify. The case went on.

The defense counsel never moved for a mistrial but merely objected twice to the District Attorney's argument and in both instances the Court tried to correct the problem first by admonishing the District Attorney and secondly by giving an instruction to the jury. The Court can't declare a mistrial unless the defendant requests it or if

there is a manifest necessity. Pa.R.Crim.P. 1118. Neither of these situations happened, so the defendant cannot complain.

## VI. CHARGE OF THE COURT

We next turn to defendant's contention that the trial court incorrectly charged the jury on numerous points and refused to charge as requested on other points.

The defendant contends that there was error by the Court in its charge in regard to commenting on the failure of defendant to call Ernest Demarchis and his father, both of whom would have taken the fifth amendment, had they been called. In support of this argument, defense counsel refers to the case of *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865 (1971), which holds that the court would not permit a witness who will obviously take the fifth amendment to testify because it may raise an inference in the jury's mind that is favorable to the Commonwealth. We fail to see how this case is applicable since neither Ernest Demarchis, II, nor his father, was called as a witness, and therefore, we think the defendant's reliance on the *Greene* case is factually inappropriate. As for the Court or the District Attorney commenting on the failure to call these men, we find no place in the record where this happened.

The defendant's complaint that the Court commented on the number of witnesses called by the two sides has no merit since the Court covered that in its charge on credibility.

Another error alleged is the manner in which the court charged on accomplice testimony. The first alleged error raised by defendant is that the court told the jury the defendant was an accomplice. Our review of the record does not bear this out. The court stated (Tr. Vol. V. p. 981a) "His testimony if believed, reveals that he was an accomplice of the defendant at the time of this alleged crime." We believe that this is a correct statement. *Commonwealth v. Banks*, 447 Pa. 356, 362, 285 A.2d 506 (1971).

Defendant next objects to the failure of the court to charge on point 3 which contains a definition of an

accomplice. While the court did not charge on defendant's point 3, it did define accomplice as follows: "Now an accomplice in law is one who being of mature age and in possession of his ordinary faculties, knowingly and voluntarily cooperates with or aids another in the commission of a crime. (Tr. Vol. V. p. 981a). This is a correct statement. *Commonwealth v. Jones*, 213 Pa.Super. 504, 508, 247 A.2d 624 (1968). The court further cautioned the jury to scrutinize closely this testimony. We believe the court adequately covered point 3 in its charge.

■ The defendant contends that the court committed reversible error by refusing to charge on points 4, 5, and 6.

These points are as follows:

(4) In determining whether or not a witness is credible or believable you may consider if that witness has an interest in the outcome of the case. The evidence shows that David Eagan has received sums of money from the Government in exchange for his cooperation and testimony in another case, as well as in this case. In determining whether or not you should believe Mr. Eagan you may consider the fact that he has received and is continuing to receive money in exchange for his cooperation and testimony. *Commonwealth v. Orr*, 138 Pa. 276 [20 A. 866].

(5) David Eagan is a paid witness. You may consider the fact that his (sic) is receiving money in exchange for his testimony in determining his credibility.

(6) The evidence shows that David Eagan made a deal with both the United States Government and the Commonwealth in exchange for his cooperation and testimony should be considered in determining whether or not he has reason to lie. The evidence shows Mr. Eagan will receive a sentence at least thirty (30) years shorter than he was exposed to, prior to his cooperation and testimony. *Commonwealth v. Ross*, 434 Pa. 167 [252 A.2d 661] (1969).

All of these points deal with Eagan's credibility and refer to his status as a paid witness. None of the points for charge contain points of law that were not adequately covered by the court. Rather the points are an effort to

relate testimony to the law. Admittedly, the court should have affirmed the points by reading them but rather the court agreed to read the points when they were called to the court's attention, but later neglected to do so.

We do feel, however, that the points were adequately covered by the Court in its charge when it said (Tr. Vol. V., p. 629) "Among other things, look to and consider any interests which your witness may have in the case on trial. The counsel for defendant as well as the District Attorney have explained to you the interests which David Eagan has as a witness in the case on trial, what his interests have been and what they are. You have that to consider in your deliberations in evaluating his testimony."

The issue was adequately presented by the court in its own language. *Commonwealth v. Sisco*, 484 Pa. 85, 89, 398 A.2d 955 (1979).

For these reasons, we believe the Court's refusal to charge on points 3, 4, 5 and 6 is somewhat unusual but we find that the Court's charge, read in its entirety, covers the elements contained therein.

 The final concern of the defendant is an inadvertent error the Court made in the "False in One, False in All Rule." The Court stated in its charge:

It means that false in one thing false in another. As used, that is what the Latin means. As used in law, the maxim merely means that if a witness willfully and corruptly swears falsely to a material aspect of the case, the jury may disregard his entire testimony. If you believe that he is throughout this week or last week willfully and corruptly swearing, you may disregard his testimony.

Now, however, it should be noted the maxim does not forbid the jury, however, from accepting the whole of the witness' testimony even though they find a deliberate falsification of his proofs in a material fact.

You have a right to accept what portion thereof you believe to be true. You have a right to disregard all of it if you so determine it to be. We are leaving that entirely for you, ladies and gentlemen of the jury.

This is clearly error but not reversible error. The False in One, False in All Rule is much to do about nothing. *Commonwealth v. Parente*, 184 Pa.Super. 125, 133 A.2d 561 (1957). It mandates nothing and merely gives the jury the right to accept or reject testimony as the jury sees fit. This was adequately explained by the Court in its general charge on credibility. We do not believe that any juror was misled by the Court's inadvertent mistake.

Next, the defendant believes that the Court's charge on reasonable doubt is inadequate. The charge given by the Court on reasonable doubt is not the customary charge presently being used but the charge of the trial judge is based on appellate court cases and it meets the standards contained therein. *Commonwealth v. Burns*, 409 Pa. 619, 187 A.2d 552 (1963) at 635, 187 A.2d 552, and *Commonwealth v. Cartagena*, 482 Pa. 6, 393 A.2d 350 (1978) at 26, 393 A.2d 350. The defendant again contends that the Court erred in failing to charge on its points 13 and 15 but we believe that the charge adequately covered those points. *Commonwealth v. Parks*, 281 Pa.Super. 38, 421 A.2d 1135 (1980); *Commonwealth v. Butler*, 442 Pa. 30, 272 A.2d 916 (1971); *Commonwealth v. Harris*, 479 Pa. 131, 387 A.2d 869 (1978).

Judgment of sentence is affirmed.