439 A.2d 756
**COMMONWEALTH of Pennsylvania,**

v.

**June FAVA, Appellant.**

Superior Court of Pennsylvania.

Argued June 1, 1981.

Filed Jan. 5, 1982.

Petition for Allowance of Appeal Granted May 3, 1982.

Richard J. Orloski, Allentown, for appellant.

Ann Keck, Assistant District Attorney, Allentown, for Commonwealth, appellee.

Before McEWEN, MONTEMURO and SHERTZ, JJ.

MONTEMURO, Judge:

This is an appeal from the Judgment of Sentence by the court below following appellant's conviction, by a jury, of possession,[1] possession with intent to deliver,[2] and delivery of [3] a controlled substance; to wit, phencyclidine (Hereinafter PCP). On appeal, the central issue is whether or not the court below erred in refusing to grant defendant's request for a writ of habeas corpus ad testificandum. For the reasons discussed below, we agree with the appellant on this issue and, accordingly, we reverse and remand for a new trial.[4]

In this case, the defendant was convicted of possession of PCP, possession with intent to deliver PCP and delivery of

1. 35 P.S. § 780–113(a)(30).

2. 35 P.S. § 780–113(a)(30).

3. 35 P.S. § 780–113(a)(30).

4. Deciding as we do, we have no occasion to address appellant's other claims that (1) the trial court erred in refusing to compel agent Licklider's testimony as an exception to the hearsay rule; (2) that exclusion of the testimony of the clerk of court about Guy Camioni's prior illegal drug sales convictions was improper; (3) that Jaindl's testimony of prior drug dealings with defendant should have been excluded; (4) that the court interfered with counsel's direct examination of the defendant; (5) that a conviction based solely on the uncorroborated testimony of an alleged accomplice denied defendant

PCP. The Commonwealth's case rested entirely on the testimony of Daniel Licklider, an undercover agent for the Pa. Dept. of Justice, Bureau of Drug Control, and Tony Jaindl, an alleged accomplice to the sale of PCP. Agent Licklider testified that on June 2, 1978, Tony Jaindl directed him to the 900 Block of North 7th Street in Allentown, Pennsylvania, took $245.00 from agent Licklider into the corner house on that street, and returned with four packets of the PCP. Agent Licklider was forbidden to enter the house. There is some controversy as to when Tony Jaindl first implicated the defendant (appellant herein), but his testimony at trial was that June Fava supplied him with the drug. ("Controlled substance" under Schedule III of the Controlled Substance, Drug, Device, and Cosmetic Act.) The house that Tony Jaindl entered on North 7th Street is the residence of the appellant.

On the first day of the trial, appellant's counsel asked Tony Jaindl on cross-examination if he knew Guy Camioni, a one-time boarder at the defendant's residence. Tony Jaindl admitted knowing Mr. Camioni, but stated that he had never purchased any drugs from him. Mr. Camioni was at that time incarcerated in Lehigh County Prison, having been previously convicted of possession and sale of marijuana.

At the close of the second day of trial, the assistant district attorney prosecuting the case went with Agent Licklider to Lehigh County Prison to intervene Guy Camioni. On the record, but out of hearing of the jury, on the opening of the third day of trial, Agent Licklider and the prosecuting district attorney told the court of their interview. Camioni apparently admitted living at the Fava residence and to having once sold some marijuana to Tony Jaindl. Camioni did not, however, specify on which dates he lived at the

her due process of law under the Pa. and U. S. constitutions; (6) that Commonwealth failed to prove beyond a reasonable doubt that defendant was not licensed to see drugs under the Controlled Substance, Drug, Device and Cosmetic Act; (7) that evidence tending to discredit defendant's claim of alibi was procedurally ineffective; and (8) that the instructions to the jury were prejudicial and incomplete. We would note, however, that these collateral claims are without merit and could be disposed of under established Pennsylvania law

residence nor did he take responsibility for selling any PCP on the date in question here. Agent Licklider said he asked Camioni what his response *would be* if he were called to testify. According to Licklider, Camioni's response was, "I *could* take the fifth amendment. I'm already in prison and nobody can do anything to me anyhow." (Emphasis added.)

Appellant contends, inter alia, that the court erred in refusing to issue a writ of habeas corpus ad testificandum at this juncture in order to compel the presence of Guy Camioni at court for an interview and possibly to testify at trial. Appellee counters with the argument that since Guy Camioni was going to assert his constitutional privilege against self-incrimination, the trial judge was well within the bounds of judicial discretion in refusing to issue the writ. For this proposition appellee relies on *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865 (1971).

The court in *Greene* held, over a strong dissent by Justice Roberts, that a witness should not be placed on the stand for the purpose of having him exercise his privilege against self-incrimination. Citing *Bowles v. U. S.*, 439 F.2d 536 (D.C.Cir.1970) as an analogous precedent, the *Greene* court extended this limitation which heretofore had applied only to the prosecution to witnesses called for the defense. The rationale for this extension was the basic principle that the jury may not draw any inference from a witness' exercise of his constitutional rights, whether the inference be favorable to the prosecution or the defense. *Bowles*, supra.

The *Bowles* court, with Judge Bazelon dissenting, opined that danger may exist in a witness' invocation of the Fifth Amendment in the presence of a jury in that there may result a disproportionate impact on the jury's deliberation. The court stated:

> The jury may think it high courtroom drama of probative significance when a witness "takes the Fifth." In reality, the probative value of the event is almost entirely undercut by the absence of any requirement that the witness justify his fear of incrimination and by the fact that it is a form of evidence not subject to cross-examination. *Bowles*, 439 F.2d at 541 (citation omitted).

Judge Bazelon found the dangers mitigated by juror's natural skepticism of any "buck passing" (*Id.* at 545, p. 13) and the prosecutor's right to "demonstrate to the jury that the person accused by the defendant is someone on whom he has prevailed (through friendship, or by threats of injury) to come to court and then refuse to testify." (*Id.*)

While there remains some question about the ultimate wisdom of the decision in *Greene*,[5] the case before us presents a collateral question, which is the *degree of certainty* required that a witness will in fact assert his privilege to remain silent. In this case, the court relied on the hearsay testimony of the Assistant District Attorney and the drug enforcement agent that *to the best of their recollection* the proposed witness told them "I *could* take the fifth amendment." (notes of Testimony at page 342, emphasis added.) At the time, the witness was incarcerated at the Lehigh County Prison which is located approximately one-half block from the courthouse. In light of such close proximity, clearly the type of testimony offered with reference to the witness' alleged assertion of his Fifth Amendment privilege constituted an insufficient basis for refusal by the court below to issue the writ of habeas corpus ad testificandum.

In *U. S. v. Johnson*, 488 F.2d 1206 (1st Cir. 1973) a case which also relied on *Bowles*, the court stated:

. . . obviously, before excluding a witness, the court must first establish reliably that the witness will claim the privilege and the extent and validity of the claim. Here the court wisely held a *voir dire* at which Johnson's (defendant) counsel was invited to question the proposed witness under oath and on the record. Only after Perez (the witness) had testified that he would claim the privilege comprehensively did the court rule to exclude him. *Id.* at 1211.

**5.** See *Commonwealth v. Pritchard*, 270 Pa.Super. 461 (1980), 411 A.2d 810 (1980) (Judge Nix for the majority at 814): "*Regardless of our view of the soundness of that decision* (see 285 A.2d at 867 Roberts, J., joined by O'Brien, J., dissenting). *Greene* controls, and the issue must be resolved against appellant." (emphasis added)

It is true that *Johnson* was not decided under Pennsylvania law and is therefore not controlling in the instant action. Nevertheless, the rationale of *Johnson* does not run counter to the relevant decisions in Pennsylvania. In fact, in all appropriate cases since *Greene* (including *Greene* itself), it is clear that the proposed witness had *affirmed on the record* (personally or by counsel) his intention to assert his constitutional privilege against self-incrimination.[6] Whatever the fears are of allowing a defense witness in a criminal case to consistently plead his right to silence, we find equally ominous the decision of a court to exclude a possible witness for the defense without reliably determining whether or not the witness will refuse to testify.

For the foregoing reasons, we reverse and remand to the court below for a new trial.

McEWEN, J., concurs in the result.

SHERTZ, J., files dissenting opinion.

Decision was rendered prior to SHERTZ, J., leaving the bench of the Superior Court of Pennsylvania.

SHERTZ, Judge, dissenting:

The question before this Court is, as aptly stated by the majority: whether or not the court below erred, that is, abuse its discretion, in refusing to grant Appellant's request for a writ of habeas corpus ad testificandum?[1] The record establishes that the lower court did not abuse its discretion in denying the request for the writ and I would therefore affirm.

The oral request by defense counsel for a writ of habeas corpus ad testificandum was made on the third and final day

---

**6.** See *Commonwealth v. Greene*, supra; *Commonwealth v. Rolen*, 486 Pa. 573, 406 A.2d 1039 (1979); *Commonwealth v. Duvall*, 277 Pa.Super. 363, 419 A.2d 1187 (1980); *Commonwealth v. Terenda*, 451 Pa. 116, 301 A.2d 625 (1973); *Commonwealth v. Davenport*, 453 Pa. 235, 308 A.2d 85 (1973).

**1.** I agree with the majority that Appellant's other claims are without merit.

of trial despite the fact that counsel was aware, prior thereto, of Mr. Camioni and his whereabouts. This is evidenced by the fact that it was defense counsel, during the course of his cross-examination of the Commonwealth's witness, Tony Jaindl, who initially introduced Camioni's name, as well as his whereabouts, in the trial. N.T. at 76. In fact, it is obvious from the record that defense counsel's trial strategy involved shifting criminal responsibility from the defendant to Camioni. N.T. at 75, 76. Counsel had sufficient opportunity to interview Camioni before and during the trial, to determine whether counsel wished to call Camioni to testify on Appellant's behalf. If such an interview had disclosed that Mr. Camioni could provide testimony beneficial to the defense, counsel could have pursued the proper procedure, of which he was well aware, as demonstrated by counsel's last minute invocation of same, to secure the witness. Defense counsel had the opportunity and responsibility to question Camioni and to arrange for his appearance prior to trial. Under such circumstances, Appellant ought not now be allowed to complain she was improperly denied an opportunity to interview and possibly obtain testimony from Mr. Camioni.

It is well settled in Pennsylvania that motions to secure witnesses are within the discretion of the trial court. *Commonwealth v. Sullivan*, 484 Pa. 130, 398 A.2d 978 (1979). The *Sullivan* case involved the trial court's denial of defendant's motion, in a murder prosecution, to have a witness brought from another city, at the Commonwealth's expense, to testify on his behalf. The motion was made while the trial was in progress. Our Supreme Court held that the trial court had not abused its discretion in denying the motion as being untimely filed.

"The court denied the motion, finding that it was untimely. The motion was a proper subject to a pre-trial motion. *See* Pa.R.Crim.P. 306. The motion was untimely unless there was no previous opportunity to make it or Appellant or his attorney were unaware of the grounds for it. Pa.R.Crim.P. 307."

*Id.,* 484 Pa. at 135, 398 A.2d at 980. *Accord: Commonwealth v. Scott,* 469 Pa. 258, 365 A.2d 140 (1976). In the instant case, defense counsel had knowledge of the existence and possible importance of the witness and had an opportunity to request a writ of habeas corpus ad testificandum. There was no denial of defendant's constitutional right to have process for obtaining witnesses in her favor inasmuch as defendant had more than five months, from the time of her arrest to the time of trial, to arrange for the appearance of the witness, but failed to request compulsory process until the final day of trial. *See also: Commonwealth ex rel. Jennings v. Maroney,* 179 Pa.Super.Ct. 571, 118 A.2d 287 (1955).

The absence of a particular witness, or the denial of permission to call him, does not, in itself, constitute a denial of compulsory process unless it also appears that the witness, if called, would have been favorable to the accused. *Ex Parte Smith,* 72 F.Supp. 935 (M.D.Pa.1947). Implicit in the accused's right "to have compulsory process for obtaining witnesses in his favor" is the requirement that the defendant establish that the person to be produced has relevant or material testimony on the issues in question. *Commonwealth v. Coffey,* 230 Pa.Super.Ct. 49, 52, 331 A.2d 829, 831 (1974). In *Coffey,* this Court held that the trial court's refusal to require the production of a witness, who was held as prisoner by the federal authorities, was not improper absent *specific information* as to what testimony the witness had to offer.

During the *in camera* hearing in the instant action, the court closely questioned the assistant district attorney, N.T. 335, 336, and the drug enforcement agent, N.T. 339, 341, concerning their interview with Mr. Camioni, in order to ascertain whether anything exculpatory to the accused was said. Neither they, nor defense counsel, gave any indication that Camioni had any relevant or admissible testimony to offer. Only then, when the court was convinced that the witness had said nothing which could be construed as exculpatory, did it deny the request for the writ.

The majority erroneously concludes that the lower court refused to issue the writ solely on the basis of the witness' possible assertion of his fifth amendment privilege against self incrimination.[2] The record does not support this conclusion. The lower court, in denying the writ, stated:

"And the witness is available to the defense. He knows where he is and he knows the procedure to be taken with respect to securing a witness from prison. I am not so sure that there is a burden on the court to produce witnesses for the defendant or the Commonwealth. The Commonwealth isn't hiding a witness. The witness's location is known." N.T. at 344.

Clearly, the lower court denied the request because it was untimely made and because the defense had a prior opportunity to secure the appearance of this witness. Consequently, the majority's analysis of the *degree of certainty* required, in order to justify the exclusion of a witness on grounds that he will claim his privilege to remain silent, is neither pertinent nor dispositive.

**2.** The majority states, ". . . the court relied on the hearsay testimony of the Assistant District Attorney and the drug enforcement agent to that effect that *to the best of their recollection* the proposed witness had told them 'I *could* take the fifth amendment'." at 758. The record does not support this conclusion. The Assistant District Attorney testified that the witness said, "he *would* take the fifth" (emphasis supplied). N.T. at 334.