532 A.2d 1203

**COMMONWEALTH of Pennsylvania**

v.

**Robert McGROGAN, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 2, 1986.

Filed Oct. 21, 1987.

Robert M. Barrett, Pittsburgh, for appellant.

Dara A. DeCourcy, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before CIRILLO, President Judge, and ROWLEY and POPOVICH, JJ.

ROWLEY, Judge:

This is an appeal from judgments of sentence for two counts of criminal solicitation to commit murder.

On April 18, 1984, Pittsburgh Police Officers, working undercover, purchased Dilaudid from Mary and Donna Hoegrel at the women's home in Pittsburgh. Both women were arrested. Mary Hoegrel agreed to cooperate with the police and telephoned her supplier (appellant) and asked him to come to her house and bring fifty Dilaudid tablets. Upon his arrival at the house, appellant was stopped by police officers, who searched him and found Dilaudid tablets on his person. The appellant was arrested, arraigned, and committed to the Allegheny County Jail in default of bail.

A jury trial before the Honorable Robert Horgos began on October 8, 1985. The evidence presented at trial established the following facts. While at the Allegheny County Jail, appellant approached a fellow inmate, Roland Steele, on May 18, 1984, and offered him $1500 if he (Steele), whom appellant believed was to be released from jail, would kill Mary and Donna Hoegrel. Appellant stated he wanted the two women killed because they were to testify against him on drug charges. Appellant asked Steele four more times if he would kill the two women. Appellant also gave Steele a

note on which he had written the address of the Hoegrels and had furnished a description of them.

On May 20 or 21, Steele telephoned Mary Hoegrel and told her of appellant's intentions and suggested that she contact the police. Mrs. Hoegrel notified the police, and as a result of a subsequent investigation, appellant was charged with two counts of criminal solicitation to commit murder.

The most damaging evidence against appellant was in the form of Roland Steele's prior testimony from a preliminary hearing, which was read into the record due to Steele's alleged unavailability. The circumstances of Steele's unavailability are as follows. On the morning of the trial, the prosecution informed the court that Commonwealth witness Roland Steele would claim the Fifth Amendment privilege against self-incrimination if called to testify. This information was relayed to the prosecution by Mr. Steele's attorney. Steele was then placed under oath and asked by the court whether he would claim the Fifth Amendment privilege on the witness stand. Steele answered yes. No further questions were asked, and trial commenced.

During trial, the Commonwealth made a motion at sidebar for the admission of Roland Steele's testimony given earlier at appellant's preliminary hearing. Defense counsel objected on the ground that the reading of Steele's prior testimony would deny appellant his Sixth Amendment right of confrontation. The trial court overruled the motion and Steele's testimony was read into evidence in its entirety. On October 10, 1985, appellant was found guilty of both charges. A timely motion for new trial and arrest of judgment was filed on October 21, 1985, and denied on January 29, 1986. On January 29, 1986, appellant was sentenced to an aggregate period of incarceration of ten to twenty years. Appellant then filed this timely appeal.

Appellant asserts [1] that the trial court erred in allowing the prior testimony of Roland Steele to be read into evi-

1. Appellant raises two additional issues which we find unnecessary to address due to our disposition of this matter. He alleges: (1) that his

dence because the introduction of such testimony violated his United States and Pennsylvania Constitutional right to confront witnesses.[2] The Commonwealth responds by contending: (1) appellant's objection at trial to introduction of the prior testimony based on the constitutional right to confrontation of witnesses is not sufficient to preserve the issue of whether the witness was truly unavailable;[3] and, (2) if it is determined that the court lacked a sufficient basis upon which to admit the prior testimony of Mr. Steele, then a harmless error analysis must be applied, and the case should be remanded to the trial court for a hearing based on available evidence as to whether or not Mr. Steele had a sufficient basis for claiming the privilege. We agree with appellant that it was error for the trial court to allow the prior testimony to be read into evidence. Because we find neither of the Commonwealth's arguments to be persuasive, we reverse the judgments of sentence and remand for a new trial.

Although the United States and Pennsylvania Constitutions guarantee an accused the right to confront the witnesses against him, the Constitutions also guarantee that no person shall be compelled "to be a witness against himself" or "give evidence against himself." U.S.Const. Amend. V; Pa.Const. Art. I, § 9. Thus, the right to confront witnesses is qualified by existing testimonial privi-

right to a speedy trial pursuant to Rule 1100 was violated when the trial court granted the Commonwealth's petition for an extension of time in which to commence the trial; and (2) that he was denied effective assistance of counsel.

**2.** U.S.Const.Amend. VI; Pa.Const. Art. I, § 9. The Sixth Amendment right to confront opposing witnesses was made applicable to the States through the Fourteenth Amendment in *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

**3.** The waiver issue advanced by the Commonwealth was raised for the first time in its application for reargument filed after this Court had filed a decision in this case. The Commonwealth did not raise the issue in its appellate brief or before the panel. Although we could hold that the Commonwealth has waived the issue by not raising it, we chose to grant reconsideration to address the argument which had been raised. Our decision to address the issue should not be construed as an indication that we would address issues under similar circumstances in the future.

leges of witnesses, including the privilege against self-incrimination. See *Commonwealth v. Allen,* 501 Pa. 525, 531, 462 A.2d 624, 627 (1983). It is the clash of defendant's right to confront his accusers and the witness' right to remain silent which results in the conflict now before us.

■ The law provides that when a witness is unavailable for trial, his or her prior recorded testimony from a preliminary hearing may be introduced, provided the defendant had counsel and a full opportunity to cross-examine the witness during the earlier proceeding. *Commonwealth v. Scarborough,* 491 Pa. 300, 421 A.2d 147 (1980), *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (1977). A witness who properly invokes his constitutional right against self-incrimination is "unavailable" for this purpose. However, it must first be determined by the trial court whether a witness is entitled to invoke the privilege.

■ Our Supreme Court has set forth the parameters of the necessary inquiry:

When [a witness is called to testify], he or she is not exonerated from answering questions merely upon the declaration that in so doing it would be self-incriminating. It is always for the court to judge if the silence is justified, and an illusory claim should be rejected. However, for the court to properly overrule the claim of privilege, it must be *perfectly clear* from a careful consideration of all circumstances that the witness is mistaken in the apprehension of self-incrimination and the answers demanded *cannot possibly* have such tendency. [Emphasis in the original; citations omitted.]

*Commonwealth v. Carrera,* 424 Pa. 551, 553–54, 227 A.2d 627, 629 (1967). The statutory provision specifying privileges and immunities of witnesses underscores the duty of the trial judge to make the determination as to the validity of the claim: "Except defendants actually upon trial in a criminal proceeding, any competent witness may be compelled to testify in any matter, civil or criminal; but he may not be compelled to answer any question which, *in the opinion of the trial judge,* would tend to incriminate

him...." 42 Pa.C.S. § 5941(a) [emphasis added]. Further, the United States Supreme Court has noted that "[t]he trial judge in appraising the [Fifth Amendment] claim must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), cited in *Commonwealth v. Allen*, 462 A.2d at 627. In *Hoffman*, the Court added that it must be "evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. at 486–87, 71 S.Ct. at 818. The record in the instant matter, as certified to this Court, contains nothing from which we can determine whether Steele was entitled to claim his constitutional right to remain silent.

The following colloquy between the trial court and Roland Steele occurred in open court, out of the presence of the jury, immediately prior to the commencement of appellant's trial:

> THE COURT: You heard the representation of the Commonwealth attorney, Mr. Awesh, who said that he spoke to your attorney, and your attorney had indicated that you would, if called to be a witness for the Commonwealth in this case, that you would take the fifth amendment. Is that correct?
>
> MR. STEELE: Sure.
>
> THE COURT: Is there any questions [sic] that you would like to ask Mr. Steele?
>
> MR. AWESH: No. I believe that's all.
>
> THE COURT: Thank you, Mr. Steele.

Trial transcript at 4. This limited colloquy does not provide a sufficient basis upon which Steele's claim of the constitutional privilege against self-incrimination can be sustained. While it is clear that a prosecutor cannot call a witness to the stand merely to have him invoke the privilege before the jury, *Commonwealth v. Bellacchio*, 296 Pa.Super. 468, 442

A.2d 1147 (1982), there nevertheless must appear on the record some basis by which the court sustained the use of the privilege.

In *Commonwealth v. Weaver*, 274 Pa.Super. 593, 418 A.2d 565 (1980), a panel of this Court was called upon to review the basis of a trial court's decision to sustain a witness' claim of the privilege during the trial of his girlfriend for the murder of her husband. The witness had allegedly participated in the crime and, when called to testify, had already been arrested and charged in the killing. His trial was scheduled to begin the following week. Our Court concluded that the following inquiry by the trial court was adequate:

> The court asked counsel what facts he planned to establish through [the witness'] testimony. Counsel stated that he intended to question [the witness] about his knowledge of the marital problems between appellant and the victim, the circumstances of his friendship with [appellant and the victim], his relationship with appellant and his observations of appellant's psychological state and physical appearance before the killing.

*Commonwealth v. Weaver*, 274 Pa.Super. at 600, 418 A.2d at 568. We noted that the trial court knew the foundation for the indictment against the witness, had heard the appellant's proposed line of questioning and was able to recognize the dangers the witness would face in answering those questions. *Id.*

Similarly, in *Commonwealth v. Cieri*, 346 Pa.Super. 77, 499 A.2d 317 (1985), the defendant to a charge of homicide by vehicle attempted to call a second driver, who had also been charged in the crime, as a witness. The witness' counsel informed the trial judge that the witness would invoke the Fifth Amendment if called to testify about the accident. The judge held a hearing in chambers to inquire as to the basis of the claim of privilege. Counsel for the witness informed the judge, on the record, that his client had been charged in the accident and that he had instructed his client to exercise his Fifth Amendment privilege if

called. The judge found that it would be improper to have the witness take the stand under these circumstances. A panel of this Court affirmed. 346 Pa.Super. at 92, 499 A.2d at 325.

No such inquiry occurred in the instant matter. Steele had not been charged with any crime in connection with this case and since testimony had not yet been taken, he had not been implicated by anyone. In fact, Steele's testimony from the preliminary hearing, which was admitted over defense counsel's objection, subsequently revealed no basis upon which Steele could validly claim the privilege. He had been asked in the prior proceeding, "Were you never a hit man?" to which he replied, "Never." Trial transcript at 63. Steele also had testified at the preliminary hearing that

> he [appellant] had asked me if I basically was interested in taking the contract, and I proceeded to tell him I don't do things like that, and I'm not about that.
>
> He said, well, I know you are, and just think about it.
> So I asked him very nastily to leave, and he left. . . .

Trial transcript at 64. We hold that the trial court erred in accepting Steele's assertion of the constitutional privilege on a record which contains no evidence linking Steele criminally to the crime charged or to any other crime which Steele may have committed. *Commonwealth v. Rolon*, 486 Pa. 573, 577, 406 A.2d 1039, 1041 (1979). Because it was error to accept Steele's assertion of the right to remain silent, and because the only justification for admitting his preliminary hearing testimony at trial was his claim of the privilege and hence his alleged unavailability, it was error for the trial judge to admit Steele's prior testimony.

■ The Commonwealth argues that appellant's objection to the introduction of Steele's prior testimony on the basis of appellant's constitutional right to confront witnesses against him [4] was not sufficient to preserve on appeal the

4. After the Commonwealth moved for the admission and reading into evidence of Steele's prior testimony, appellant's trial counsel placed her objection on the record:

question of whether the trial court erred in permitting the witness to invoke the privilege against self-incrimination, thus rendering him "unavailable." We disagree.

It is well settled in this Commonwealth that where a specific objection is interposed, other possible grounds for the objection are waived. *Commonwealth v. Budd,* 443 Pa. 193, 278 A.2d 879 (1971). However, in the case before us, the unavailability of the witness is not a ground which must be asserted separately because the witness' prior testimony was admitted under a specific exception to the hearsay rule which permits the introduction of certain prior testimony only *where a witness is unavailable.*[5] See McCormick on Evidence § 254, p. 759 (3d ed. 1984). In *Commonwealth v. Galloway,* 476 Pa. 332, 382 A.2d 1196 (1978), our Supreme Court addressed the claim that admission into evidence of a witness' former testimony from that witness' own previous trial violated appellant's Sixth Amendment right to confrontation. The Court concluded that the confrontation analysis must begin with an inquiry into the applicability of the exception to the hearsay rule:

"[W]ell-recognized exceptions to the hearsay rule supported by circumstances guaranteeing sufficient 'indicia of reliability' do not raise confrontation problems." [cita-

I'm going to object to him reading it for lots of reasons. First of all, I believe that it denies the Defendant the right to confrontation in terms of the witnesses in this proceeding.

I'm denied the opportunity to cross-examine the man. The jury is denied an opportunity to observe his demeanor and to find out, you know, anything about his background, and for those reasons, I would object.

Trial transcript at 57.

5. The trial judge's response to defense counsel's objection demonstrates the inextricability of the two issues:

The Court notes in the first instance, the Court had a case involving Craig Henry that dealt with that same issue, specifically that the individual had pled the fifth amendment; therefore, he was deemed unavailable, the result of which a previous transcript, preliminary hearing transcript was held admissible. It was in front of Judge Tamilia.

Be that as it may, you mentioned confrontation. In the preliminary hearing, one, Mr. Steele was under oath; and two, he was subject to cross-examination.

Trial transcript at 57–58.

tions omitted] Accordingly, before addressing the merits of the constitutional [right to confrontation claim] raised by appellant, it is appropriate first to determine whether [the witness'] prior testimony was admitted properly under the hearsay exception for former testimony. [Appellant's] confrontation claim becomes ripe for review only if [the witness'] former testimony is found to have been correctly admitted under state evidentiary law.

476 Pa. at 335–36, 382 A.2d at 1198. Thus, the confrontation issue raised by appellant can only be reached after a determination of whether the trial judge properly admitted into evidence the witness' prior testimony, which is dependant upon a finding of unavailability. Since the issues of unavailability and right to confrontation are inextricably intertwined, we hold that there is no need for trial counsel to raise the unavailability issue separately. An objection of record based upon denial of a defendant's right to confront his accusers automatically preserves the issue of whether a witness was unavailable for purposes of the former testimony exception to the hearsay rule.

The Commonwealth next argues that we must apply a harmless error analysis in fashioning an appropriate remedy to the trial court's error. The Commonwealth cites *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 1436–38, 89 L.Ed.2d 674 (1986), for the proposition that the matter should be remanded for such an analysis based upon available evidence of the witness' unavailability.

■ Although some constitutional rights are so basic to a fair trial that their infraction can never be treated as harmless, not all trial errors which violate the Constitution automatically call for reversal. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The beneficiary of the constitutional error, the Commonwealth in the instant matter, must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.*, 386 U.S. at 24, 87

S.Ct. at 828; *Commonwealth v. Story,* 476 Pa. 391, 406 n. 11, 383 A.2d 155, 162 n. 11 (1978).

In *Van Arsdall,* respondent was convicted of murdering a fellow guest following a New Year's Eve party. The prosecution called sixteen witnesses, including several persons who had attended the party. During cross-examination defense counsel sought to impeach one of the party goers by questioning him about a public drunkenness charge which had been dismissed in exchange for his agreement to speak with the prosecutor about the murder. The trial court barred any cross-examination about the agreement, citing Delaware Rule of Evidence 403 which allows the court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."

The Supreme Court concluded in *Van Arsdall* that the trial court had committed constitutional error by barring all inquiry into the possibility that the witness was biased as a result of the State's dismissal of his public drunkenness charge. However, the Court "reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Id.* 106 S.Ct. at 1436. The Court set forth its reasons for so holding:

> The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, [citation omitted] and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

*Delaware v. Van Arsdall,* 106 S.Ct. at 1436–37. The Supreme Court remanded the case to the Delaware Supreme Court for a determination of whether the error was "harmless beyond a reasonable doubt." Factors which the reviewing court was to consider included: (1) the importance of the witness' testimony in the prosecution's case; (2)

whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.* at 1438.

 We agree with the Commonwealth that a harmless error analysis is mandated when violations of the constitutional right to confrontation are alleged. Pursuant to such analysis we conclude that the trial court's error in the instant matter cannot be considered harmless beyond a reasonable doubt. We reach our conclusion with the aid of the five factors enumerated in *Van Arsdall.*

First, the improperly admitted preliminary hearing testimony was of crucial importance to the prosecution's case. At the preliminary hearing Steele had testified unequivocally that while both men were incarcerated on range eighteen (18) at the Allegheny County Jail, appellant asked him to kill Mary and Donna Hoegrel. At trial, two fellow inmates from range eighteen (18) were called as witnesses by the defense and they testified that Steele, not appellant, had initially suggested the killings. Trial transcript at 103, 106, 111 and 117. The two inmates were the only on-scene witnesses to the discussions between Steele and appellant, with the exception of Leroy Collington, the ranger on eighteen, who overheard none of the frequent conversations between the two men, and Ronald James Gonano.[6] By finding appellant guilty, it is apparent that the jury disregarded the testimony of all defense witnesses and relied on the version of the events given by Steele at the preliminary hearing, as buttressed by witnesses who learned of the events solely through Steele.

Second, Steele's prior testimony was not cumulative. His is the only version of the events which supports the prosecution's theory that appellant approached Steele with the

6. Mr. Gonano's testimony centered on an incident in the prison yard during which Steele attempted to give a phone number to appellant, who refused to accept it. Gonano did not testify whether it was Steele, or appellant, who first came forward with the idea of the killings.

plan, and not vice versa. Third, the only testimony which could be construed as corroborating Steele is that of Mary Hoegrel, Detectives James Ramsey and Kenneth Robinson, and Leroy Collington. Yet everything each of these witnesses learned about the alleged solicitation came directly from Steele and they have no independent knowledge of the events which transpired. Conversely, three defense witnesses and appellant contradicted the prior testimony given by Steele.

The fourth *Van Arsdall* factor (extent of cross-examination otherwise permitted) is not applicable where, as here, the witness did not appear at trial and was not subject to cross-examination. Fifth, the prosecution did not have a strong case. Essentially, the case was a matter of Steele's word against appellant's word, and the jury believed the prior testimony of Steele. In light of these factors, we hold that the trial court's error was not harmless beyond a reasonable doubt. Therefore, the trial court's ruling that Steele was unavailable, thereby opening the door to the use of his prior recorded testimony, was not constitutionally harmless.

Finally, because the record is devoid of any bases supporting the trial court's decision to permit Steele to assert the right to silence, the Commonwealth would have this Court remand the case for an analysis by the trial court "based upon available evidence of the witness' unavailability." Application for Reargument at 3.

In the recent case of *Commonwealth v. Meo*, decided by a panel of this Court, we addressed appellant's claim that the trial court erred in denying defense counsel access to a report prepared by a police officer who testified at appellant's trial. The Commonwealth contended that any error in the trial court's denial was harmless because the report contained nothing more than facts recited in the probable cause affidavit and testified to at the suppression hearing and at trial. *Commonwealth v. Meo*, 362 Pa.Super. 328, 524 A.2d 902 (1987). We remanded the case to the trial

court because the record was insufficient for a disposition on review. Judge Beck wrote:

> The difficulty in analyzing the harmlessness of the error in the instant case is that the officer's report is not part of the record, and we therefore cannot "determine what effect the court's ruling might have had on the jury's verdict." [citation and footnote omitted] In such cases, we must remand to the trial court for an evidentiary hearing to determine whether the failure to allow appellants access to the report prepared by the police officer witness was harmless error. *Commonwealth v. Cooper*, 468 Pa. 390, 391, 363 A.2d 783, 783 (1976), cert. denied sub. nom. *Cooper v. Pennsylvania*, 429 U.S. 1048, 97 S.Ct. 758, 50 L.Ed.2d 763 (1977); *Commonwealth v. Grimm*, [249 Pa.Super. 441, 378 A.2d 377 (1977)].

We contemplated that on remand, the trial court would examine the police report and review the testimony to determine whether the Commonwealth's assertions were correct as to the harmlessness of the error.

■ The instant matter presents an entirely different fact situation. As we have already concluded, the trial court erred in admitting Steele's prior testimony and the record is abundantly clear that such prior testimony was the predominant, if not the sole, basis upon which appellant was convicted. Thus, there is no need to remand the case for an evidentiary hearing on that basis. Moreover, the Commonwealth at no time, at oral argument or in the pleadings, presented any reasons in support of its belief that the error was harmless.

The Commonwealth's position regarding remand instead appears to be an attempt to get back into court to supplement the record to show that Steele had valid reasons for asserting the right against self-incrimination. However, the record indicates that after Steele informed the court of his intention to invoke the Fifth Amendment privilege the trial judge gave the assistant district attorney the opportunity to question Steele and thus establish a record of his unavailability. The assistant district attorney declined.

The trial court "cannot effectively determine whether 'a responsive answer to a question or an explanation of why it cannot be answered might be [incriminating]' except in the context of a propounded question." *National Life Insurance Company v. Hartford Accident and Indemnity Company,* 615 F.2d 595, 598 (3d Cir.1980), citing *Hoffman v. United States,* 341 U.S. 479, 487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

■ When, after a verdict has been rendered, a litigant asks for the extraordinary relief of an evidentiary hearing in order to supplement the record with evidence that should have been presented at trial, that litigant at the very least must: (1) state with particularity what evidence he intends to bring forward and, if a colloquy is involved, state when the evidence became available in relation to the colloquy; and, (2) offer an explanation of why he failed to establish the record at trial.[7] This is not to say, however, that such relief will be granted as a matter of course. On the contrary, an evidentiary hearing for these purposes will be granted only when the equities of justice demand such relief.

Judgments of sentence vacated and case remanded for a new trial. Jurisdiction relinquished.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I would note that, with the vacation of the judgments of sentence and the awarding of a new trial, the result being accomplished exceeds the remedial measure necessary to rectify the shortcomings affecting the trial proceedings.

I see no reason why a vacation of the judgments of sentence and a direction that an evidentiary hearing take place to ascertain, by the trial court's incisive questioning,

7. We think the criterion by which after-discovered evidence may be admitted provides a useful benchmark (evidence "discovered after the trial [which] could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence"). *Commonwealth v. Valderrama,* 479 Pa. 500, 505, 388 A.2d 1042, 1045 (1978).

if, in fact, Mr. Steele would be exposing himself to criminal repercussions if forced to testify against the defendant, and, thus, is truly "unavailable" and entitled to invoke the Fifth Amendment could not be accomplished.

If the trial court concludes that Mr. Steele would be justified in exercising his right to remain silent, his preliminary hearing testimony would be considered admissible, as was the case instantly, the judgment of sentence could be reimposed and the appellant would then be afforded the opportunity to appeal the ruling without either side having to proceed through the rigors of another trial.

However, were the trial court to conclude, following a hearing on remand, that the Commonwealth's key witness (Steele) was not exposing himself to criminal liability if forced to testify, then a new trial could be awarded by the trial court—a result consonant with that sought by the Majority here.

I see no need to direct a new trial on remand absent the conducting of an evidentiary hearing beforehand. As for the criteria referred to by the Majority as the standard by which an evidentiary hearing is to be justified in such a case as poised for our review, I find it to be unpersuasive.