546 A.2d 67

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Raymond YABOR, Appellant.**

Superior Court of Pennsylvania.

Argued March 8, 1988.

Filed June 29, 1988.

Reargument Denied Aug. 26, 1988.

admissible to void the mortgage. *Gilmore; Germantown Manufacturing Co.; Greenwood.*

358

Edward J. Daly, Philadelphia, for appellant.

Suzan Willcox, Assistant District Attorney, Philadelphia, for Com., appellee.

Before ROWLEY, WIEAND and MONTEMURO, JJ.

WIEAND, Judge:

Raymond Yabor was tried by jury and was found guilty of aggravated assault, conspiracy, possession of an instrument of crime and carrying firearms on a public street. Post-trial and supplemental post-trial motions were denied, and Yabor was sentenced to serve two consecutive terms of imprisonment of not less than five (5) years nor more than ten (10) years for aggravated assault and of not less than one (1) year nor more than two (2) years for conspiracy, to be followed by a consecutive two year period of probation

for possessing an instrument of crime.[1]  An appeal was filed but later dismissed due to counsel's failure to file a brief.  Thereafter, in response to a P.C.H.A. petition, Yabor was granted leave to file an appeal nunc pro tunc.  Now, on direct appeal from the judgment of sentence, Yabor raises the following issues for our consideration:  (1) whether the trial court erred by allowing the preliminary hearing testimony of the victim to be introduced into evidence without establishing on the record that the victim had a valid basis for asserting the privilege against self-incrimination;  (2) whether the trial court erred by allowing the victim to assert the privilege against self-incrimination outside the presence of the jury;  and (3) whether trial counsel rendered ineffective assistance.  Finding no basis for a new trial, we affirm the judgment of sentence.

The facts which gave rise to appellant's conviction were summarized by the trial court as follows:

> On July 27, 1983, Defendant arrived nearby 3206 Fordham Road in Philadelphia in the rear passenger seat of a brown cadillac (N.T. 5/22/86 p. 22).  He emerged from the automobile attired entirely in white;  carrying a twelve gauge shotgun (N.T. 5/22/86 p. 22).  Defendant treked [sic] accross [sic] two front lawns arriving at the front door of 3206 Fordham Road (N.T. 5/22/86 p. 23).  Minutes later two shots rang out.  Someone who had witnessed Defendant's dramatic arrival promptly called the police (N.T. 5/22/86 p. 23).  Meanwhile, the brown cadillac sped away (N.T. 5/22/86 p. 23).  Moments later, Mr. Yabor exited the house.  He was still clutching the now disassembled shotgun (i.e. "broken" into two pieces).  Blood spattered his clothes (N.T. 5/22/86 p. 23).  A local contractor stopped Defendant, ordering him to halt as police were on their way (N.T. 5/22/86 p. 23).  However, the brown cadillac suddenly reappeared and Defendant, ignoring the warning, leaped in the car which once again sped away (N.T. 5/22/86 p. 24).  A mailman who had

---

1.  Yabor's conviction for carrying firearms on a public street merged with his conviction for possession of an instrument of crime for purposes of sentencing.

been cowering by his mailbox, managed to copy down the cadillac's license plate number before the perpetrators drove away (N.T. 5/22/86 p. 24). The complainant, who had sustained two close range shotgun blasts then stumbled outside and down his front steps (N.T. 5/26/86 p. 25). Police arrived immediately thereafter (N.T. 5/22/86 p. 25).

A short distance away from the Fordham Road incident, a passerby observed the "get away car" screech to a halt in another residential neighborhood (N.T. 5/22/86 p. 44). A person in the front passenger seat exited the car and Defendant handed him the partially disassembled shotgun (N.T. 5/22/86 p. 45). This person attempted to "break" or further disassemble the shotgun over his knee but was unsuccessful (N.T. 5/22/86 p. 45). Apparently frustrated, Mr. Yabor jumped out, broke the gun himself and threw the pieces into a city inlet (N.T. 5/22/86 p. 46). Both men entered the car and for the third time it sped off (N.T. 5/22/86 p. 47). Defendant, the driver, and the third cohort were apprehended virtually minutes afterward (N.T. 5/22/86 p. 57). Five twelve-gauge shotgun shells, (the appropriate size for the gun in question), were recovered from Mr. Yabor during his arrest (N.T. 5/22/86 p. 57). Said shotgun was recovered from the sewer and through ballistics studies was determined to be the only gun which could possibly have fired the near-fatal shots (N.T. 5/23/86 p. 116).

Finally, although Complainant was unavailable for trial, the jury heard no less than three separate statements by Complainant identifying Defendant as his assaultant [sic]. The first statement was made as Complainant was about to undergo emergency treatment (N.T. 5/23/86 p. 16). The second, made during Mr. Yabor's preliminary hearing, was read to the jury during the Commonwealth's case (N.T. 5/23/86 p. 94). Mr. Yabor was implicated a third time during a co-defendant's trial. This statement was presented during this Defendant's case-in-chief (N.T. 5/27/86 p. 30).

At trial, the Commonwealth intended to call the victim, Joseph DeLeo, as a witness to establish appellant's identity as the man who had shot DeLeo. Before DeLeo was to testify, however, his attorney informed the trial court, the prosecuting attorney, and defense counsel that his client intended to invoke the privilege against self-incrimination if asked any questions concerning the identity of the person who had shot him. Thereafter, DeLeo was examined outside the presence of the jury and did, indeed, refuse to answer inquiries about the person who had shot him. The trial court concluded that DeLeo was unavailable as a witness and ruled that his preliminary hearing testimony could be used by the Commonwealth. The court also refused to allow defense counsel to call DeLeo as a witness for the purpose of allowing the jury to observe that DeLeo had invoked the privilege against self-incrimination.

■ We find no merit in appellant's contention that he was denied the right of confrontation because the trial court refused to allow DeLeo's invocation of the privilege against self-incrimination before the jury. The Supreme Court's decision in *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865 (1971) is controlling.[2] In *Greene*, the Supreme Court held that a witness should not be placed on the stand for the purpose of having him exercise the privilege against

2. Appellant's reliance on *Commonwealth v. Sims*, 513 Pa. 366, 521 A.2d 391 (1987) is misplaced. The Court in *Sims* held that a defendant should have been permitted to have adverse witnesses invoke their assertion of the attorney-client privilege in the presence of the jury. The ruling in *Sims*, however, did not overrule or otherwise call into doubt the continuing validity of the Court's prior decision in *Commonwealth v. Greene, supra*. In fact, the Court in *Sims* said:

In *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865 (1971), the majority opinion stated that "the jury may not draw any inference from a witness' exercise of his constitutional rights whether the inference be favorable to the prosecution or the defense...." *Id.*, 445 Pa. at 231, 285 A.2d at 867 (emphasis in original). Regardless of the wisdom of that decision (see dissent of Roberts, J.,), it is not applicable to the instant case because here we are not concerned with a constitutional privilege but rather one that is of statutory origin.

*Commonwealth v. Sims, supra*, 513 Pa. at 377 n. 1, 521 A.2d at 396 n. 1.

self-incrimination in front of the jury. More recently, this Court said:

> A witness should not be placed on the stand solely for the purpose of having him exercise his privilege against self-incrimination before the jury. "If it appears that a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand. Neither side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege ..." *United States v. Lacouture*, 495 F.2d 1237, 1240 (5th Cir.), *cert. denied*, 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974), quoting *United States v. Johnson*, 488 F.2d 1206, 1211 (1st Cir.1973). See also: *Bowles v. United States*, 142 U.S.App.D.C. 26, 32, 439 F.2d 536, 542 (1970), *cert. denied*, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971); *Commonwealth v. Greene*, 445 Pa. 228, 231–232, 285 A.2d 865, 867 (1971); *Commonwealth v. Pritchard*, 270 Pa.Super. 461, 468, 411 A.2d 810, 814 (1979); *Commonwealth v. Hackett*, 225 Pa.Super. 22, 24, n. 2, 307 A.2d 334, 335 n. 2 (1973).

*Commonwealth v. Cieri*, 346 Pa.Super. 77, 91, 499 A.2d 317, 324 (1985), quoting *Commonwealth v. Bellacchio*, 296 Pa.Super. 468, 474–475, 442 A.2d 1147, 1150 (1982). It is readily apparent, therefore, that the trial court did not err by refusing to allow appellant to call DeLeo as a witness solely for the purpose of having him invoke the privilege against self-incrimination in the presence of the jury.

Appellant's contention that the trial court erred when it failed to determine, on the record, whether DeLeo was entitled to invoke the privilege against self-incrimination is more troubling. A similar scenario was the subject of a lengthy discussion in *Commonwealth v. McGrogan*, 367 Pa.Super. 394, 532 A.2d 1203 (1987). There, a panel of this Court said:

> Although the United States and Pennsylvania Constitutions guarantee an accused the right to confront the witnesses against him, the Constitutions also guarantee

that no person shall be compelled "to be a witness against himself" or "give evidence against himself." U.S. Const. Amend. V; Pa. Const. Art. I, § 9. Thus, the right to confront witnesses is qualified by existing testimonial privileges of witnesses, including the privilege against self-incrimination. See *Commonwealth v. Allen*, 501 Pa. 525, 462 A.2d 624, 627 (1983). It is the clash of defendant's right to confront his accusers and the witness' right to remain silent which results in the conflict now before us.

The law provides that when a witness is unavailable for trial, his or her prior recorded testimony from a preliminary hearing may be introduced, provided the defendant had counsel and a full opportunity to cross-examine the witness during the earlier proceeding. *Commonwealth v. Scarborough*, 491 Pa. 300, 421 A.2d 147 (1980), *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977). A witness who properly invokes his constitutional right against self-incrimination is "unavailable" for this purpose. However, it must first be determined by the trial court whether a witness is entitled to invoke the privilege.

Our Supreme Court has set forth the parameters of the necessary inquiry:

When [a witness is called to testify], he or she is not exonerated from answering questions merely upon the declaration that in so doing it would be self-incriminating. It is always for the court to judge if the silence is justified, and an illusory claim should be rejected. However, for the court to properly overrule the claim of privilege, it must be perfectly clear from a careful consideration of all circumstances that the witness is mistaken in the apprehension of self-incrimination and the answers demanded cannot possibly have such tendency. [Emphasis in the original; citations omitted.] *Commonwealth v. Carrera*, 424 Pa. 551, 553–54, 227 A.2d 627, 629 (1967). The statutory provision specifying privileges and immunities of witnesses underscores the duty of the trial judge to make the determination as to

the validity of the claim: "Except defendants actually upon trial in a criminal proceeding, any competent witness may be compelled to testify in any matter, civil or criminal; but he may not be compelled to answer any question which, in the opinion of the trial judge, would tend to incriminate him...." 42 Pa.C.S. § 5941(a). [emphasis added]. Further, the United States Supreme Court has noted that "[t]he trial judge in appraising the [Fifth Amendment] claim must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." *Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), cited in *Commonwealth v. Allen,* 462 A.2d at 627. In *Hoffman,* the Court added that it must be "evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States,* 341 U.S. at 486–87, 71 S.Ct. at 818.

. . . .

While it is clear that a prosecutor cannot call a witness to the stand merely to have him invoke the privilege before the jury, *Commonwealth v. Bellacchio,* 296 Pa.Super. 468, 442 A.2d 1147 (1982), there nevertheless must appear on the record some basis by which the court sustained the use of the privilege.

*Id.,* 367 Pa.Superior Ct. at 399–402, 532 A.2d at 1206–1207. See also: *Commonwealth v. Rolon,* 486 Pa. 573, 406 A.2d 1039 (1979). Cf. *Commonwealth v. Cieri, supra* (adequate basis for invoking privilege where witness was charged criminally in connection with the same occurrence giving rise to charge of homicide by vehicle against defendant); *Commonwealth v. Weaver,* 274 Pa.Super. 593, 418 A.2d 565 (1980) (adequate basis for invoking privilege where trial court knew of foundation for indictment against witness and determined that proposed line of questioning presented danger of incrimination to witness).

■ After a careful examination of the record in this case, we find no basis for determining that there was adequate reason for permitting DeLeo to invoke the privilege against self-incrimination. Although DeLeo was questioned by both the prosecuting attorney and defense counsel, the trial court did not inquire regarding the existence of a basis for asserting the privilege. The court also did not suggest that it was aware of any basis that would support an exercise of the privilege. Finally, we are unable to determine from any other part of the record whether a valid reason existed for DeLeo's asserting the privilege. The Commonwealth argues in its brief on appeal that DeLeo's invoking of the privilege was based on events which occurred after he had testified at appellant's preliminary hearing. It is asserted that DeLeo assaulted appellant in retaliation for being shot and that he was arrested and charged for this offense, with the charges being dropped, however, when Yabor failed to testify against him at two scheduled preliminary hearings. From this the Commonwealth speculates that DeLeo's basis for asserting the privilege against self-incrimination was a fear that by testifying against appellant at trial, appellant would change his mind about not testifying against DeLeo in the proceedings against DeLeo. This was not an adequate reason for allowing DeLeo to invoke the privilege. Moreover, there is no basis in this record for concluding that the trial court actually determined that DeLeo's subsequent assault of appellant was an adequate basis upon which DeLeo could properly invoke the privilege.[3] We are not permitted to

3. During a hearing held on appellant's post-trial and supplemental post-trial motions the trial court did address the issue of DeLeo's invoking of the privilege against self-incrimination as follows:

I have to say that, not only did I question, but I also was in contact with Judge Mazzola, who was Mr. DeLeo's Judge in his case, who not only concurred with me, but urged me actively to sever the trials of Childs and ...
. . . .
As I said, there were several pretrial hearings, all of record in this case, that laid the foundation, more pretrial hearings than I ever care to have on another case.

consider allegations contained in the Commonwealth's brief which are not part of the record as certified to us on appeal. See: *Commonwealth v. Stanton*, 294 Pa.Super. 516, 440 A.2d 585 (1982); *Commonwealth v. Rini*, 285 Pa.Super. 475, 427 A.2d 1385 (1981). See also: Pa.R.A.P. 1921. We are, therefore, constrained to hold that the trial court erred when it accepted DeLeo's assertion of the privilege against self-incrimination without first determining that he was justified in asserting the same. See: *Commonwealth v. Rolon, supra,* 486 Pa. at 577, 406 A.2d at 1041; *Commonwealth v. McGrogan, supra* 367 Pa.Super. at 399–405, 532 A.2d at 1206–1208.

█ Despite our finding that the trial court erred by failing to determine whether the privilege was properly asserted, our inquiry is not at an end. This error does not automatically entitle appellant to a new trial. Instead, the trial court's ruling is now subject to a harmless error analysis. See: *Commonwealth v. McGrogan, supra,* 367 Pa.Superior Ct. at 405–411, 532 A.2d at 1209–1211. In order for us to find this error harmless, however, harmlessness must appear beyond a reasonable doubt. *Commonwealth v. Story,* 476 Pa. 391, 406 n. 11, 383 A.2d 155, 162 n. 11 (1978). "[A]n error cannot be held harmless unless [we] determine[ ] that the error could not have contributed to the verdict." *Commonwealth v. Story, supra,* 476 Pa. at 409, 383 A.2d at 164. See also: *Commonwealth v. Turner,* 499 Pa. 579, 454 A.2d 537 (1982); *Commonwealth v. Whiting,* 358 Pa.Super. 465, 517 A.2d 1327 (1986); *Commonwealth v. Kellum,* 339 Pa.Super. 513, 489 A.2d 758 (1985). The Commonwealth argues that this error was harmless be-

So, if it wasn't asserted the day of trial in the in camera hearing that I held, all of us considered it only an extension of the several pretrial, on-the-record hearings that we had held regarding the rights of Mr. Childs and Mr. DeLeo.

(N.T. August 27, 1986 at pp. 34–35). From this statement, however, we are unable to ascertain on what basis Mr. DeLeo asserted the privilege or why a proposed question regarding the identity of DeLeo's assailant would have been incriminating to him. Moreover, this statement was made by the trial court post-trial and the numerous pre-trial hearings to which the court refers are not a part of the record which has been certified to this Court on appeal.

cause the evidence of appellant's guilt was overwhelming and because the use of DeLeo's preliminary hearing testimony was merely cumulative. We are constrained to agree.

In *Commonwealth v. McGrogan, supra,* we set forth the following five factors to be considered in making a harmless error determination:

(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case.

*Id.* 367 Pa.Super. at 406, 532 A.2d at 1209, citing *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

■ Applying these factors to the instant case, we are persuaded that the trial court's error in admitting DeLeo's testimony was harmless beyond a reasonable doubt. Not only was the Commonwealth's evidence overwhelming, but, more importantly, DeLeo's preliminary hearing testimony identifying appellant as the perpetrator was cumulative. In addition to DeLeo's testimony at the preliminary hearing, the jury heard DeLeo's spontaneous statement, which had been made after his arrival at a hospital for treatment and in which he had identified appellant as the man who shot him. The jury also heard that DeLeo, at the trial of one of appellant's co-conspirators, had identified appellant as his actual assailant. This evidence was offered by the defense and was properly received. Under these circumstances, it cannot be said that appellant was harmed by the jury's learning that DeLeo had also identified appellant as the assailant at the preliminary hearing.

Appellant makes three specific averments of ineffective assistance by trial counsel.

Because the law presumes that counsel is effective, the burden of establishing ineffectiveness rests with appellant. *Commonwealth v. Floyd,* 506 Pa. 85, 90, 484 A.2d

365, 367 (1984); *Commonwealth v. McKendrick*, 356 Pa.Super. 64, 71, 514 A.2d 144, 148 (1986), *allo. denied*, 514 Pa. 629, 522 A.2d 558 (1987). To meet that burden, appellant must demonstrate that 1) the issue underlying his claim of ineffectiveness is of arguable merit; 2) the course chosen by counsel had no reasonable basis designed to serve his interests; and 3) he suffered prejudice as a result of counsel's ineffectiveness. *Commonwealth v. Pierce*, 515 Pa. 153, [158–160], 527 A.2d 973, 975–76 (1987); *Commonwealth v. Buehl*, 510 Pa. 363, 378–79, 508 A.2d 1167, 1174–75 (1986); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–5 & n. 8, 235 A.2d 349, 352–53 & n. 8 (1967).

*Commonwealth v. House*, 371 Pa.Super. 23, 28, 537 A.2d 361, 363 (1988).

▮ Appellant's first allegation of ineffectiveness is that trial counsel failed to have the entire cross-examination of Joseph DeLeo at the preliminary hearing read to the jury. This issue has been raised for the first time on appeal. Following trial, appellant's trial counsel filed post-trial motions. Appellant was thereafter represented by new counsel who filed supplemental post-trial motions in which numerous instances of trial counsel's alleged ineffectiveness were raised. In the supplemental post-trial motions, however, it was not alleged that trial counsel had been ineffective for failing to offer into evidence the entirety of DeLeo's cross-examination at the preliminary hearing. This specific issue is now being raised on appeal by appellant's third attorney. The issue, however, has been waived. The law is clear that "a claim of ineffectiveness must be raised at the earliest stage in the proceedings at which counsel whose effectiveness is being challenged no longer represents appellant." *Commonwealth v. House, supra*, 371 Pa.Superior Ct. at 27, 537 A.2d at 363. See also: *Commonwealth v. Cargo*, 498 Pa. 5, 19, 444 A.2d 639, 646 (1982); *Commonwealth v. Seachrist*, 478 Pa. 621, 624, 387 A.2d 661, 663 (1978). Because this issue was not raised at the first opportunity after appellant was not represented by trial

counsel, i.e., in the filing of the supplemental post-trial motions, appellant's first allegation of ineffectiveness has been waived and is not preserved for appellate review.

■ Next, appellant argues that his trial counsel was ineffective for introducing at trial the testimony of Joseph DeLeo which had been given at the trial of Michael McCarthy, one of appellant's co-conspirators' and in which DeLeo had identified appellant as the man who shot him. We do not agree. Our review of this testimony suggests that trial counsel attempted to use DeLeo's testimony at the McCarthy trial in order to impeach both the spontaneous statement which DeLeo had made to police at the hospital and also the testimony which he had given at the preliminary hearing. At the McCarthy trial DeLeo had been asked if he remembered who had shot him. He answered in the negative. To refresh his recollection, he had been shown the statement which he had given to police at the hospital. After reading the statement, DeLeo had testified at the McCarthy trial as follows:

Q: After reading that, sir, does that refresh your recollection as to who it was that shot you, sir?

A: Yeah.

Q: Who was it?

A: Ray.

Q: When you say "Ray," who is Ray, sir?

A: I don't know.

Q: You knew him as Ray, sir?

A: That's it.

(N.T. May 27, 1986 at p. 30). With respect to his testimony at the preliminary hearing, DeLeo had testified at the McCarthy trial that he was "all drugged up" at the preliminary hearing and could not recall his testimony. At appellant's trial, defense counsel sought to use the testimony which DeLeo had given at the McCarthy trial to impeach DeLeo's credibility and to place into doubt DeLeo's ability to recall and recount the details of his being shot. It seems clear that the course of action chosen by appellant's trial counsel had a reasonable basis designed to serve appellant's

interests. Therefore, we conclude that appellant's trial counsel was not ineffective for attacking the credibility of the unavailable witness, Joseph DeLeo, through the use of DeLeo's testimony at the McCarthy trial.

■ Finally, appellant argues that his trial counsel was ineffective for failing to request a mistrial because of statements made by the prosecuting attorney during closing argument which suggested that appellant had not been truthful in his testimony and which characterized the shooting as a "hit." Appellant asserts that these remarks were both improper and prejudicial. We disagree. Concerning claims of prosecutorial misconduct the Supreme Court has said:

It is well established that a prosecutor, just as a defense attorney, must have reasonable latitude in presenting a case to the jury and must be free to present his or her arguments with "logical force and vigor." *Commonwealth v. Smith*, 490 Pa. 380, 387, 416 A.2d 986 (1980), quoting *Commonwealth v. Cronin*, 464 Pa. 138, 143, 346 A.2d 59, 62 (1975). Counsel's remarks to the jury may contain fair deductions and legitimate inferences from the evidence presented during the testimony. *Commonwealth v. Fairbanks*, 453 Pa. 90, 306 A.2d 866 (1973); *Commonwealth v. Stevens*, 276 Pa.Super. 428, 419 A.2d 533 (1980). The prosecutor may always argue to the jury that the evidence establishes the defendant's guilt, *Commonwealth v. Capalla*, 322 Pa. 200, 185 A. 203 (1936) although a prosecutor may not offer his personal opinion as to the guilt of the accused either in argument or in testimony from the witness stand. *Commonwealth v. DiNicola*, 503 Pa. 90, 468 A.2d 1078 (1983); *Commonwealth v. Pfaff*, 477 Pa. 461, 384 A.2d 1179 (1978); *Commonwealth v. Cronin, supra.* Nor may he or she express a personal belief and opinion as to the truth or falsity of evidence of defendant's guilt, including the credibility of a witness. *Commonwealth v. Kuebler*, 484 Pa. 358, 399 A.2d 116 (1979) (where defendant's version of events was branded a "big lie"); ABA Standards for

Criminal Justice, Standards Relating to the Prosecution Function Section 5.8(b) (Approved Draft, 1971).

However, not every intemperate or uncalled for remark by the prosecutor requires a new trial. As we have stated many times:

> [C]omments by a prosecutor do not constitute reversible error unless the "unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Anderson, supra* at 501 Pa. [275, at] 282, 461 A.2d [208, at] 211 [1983]; *Commonwealth v. Upsher,* 497 Pa. 621, 627, 444 A.2d 90, 93 (1982).

> *Commonwealth v. Carpenter,* 511 Pa. 429, 439, 515 A.2d 531 (1986); *Commonwealth v. D'Ambro,* 500 Pa. 303, 309–10, 456 A.2d 140 (1983). Furthermore, the prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred. *Commonwealth v. Carpenter, supra,* 511 Pa. at 439, 515 A.2d 531, quoting *Commonwealth v. Smith, supra,* 490 Pa. at 388, 416 A.2d at 989.

*Commonwealth v. D'Amato,* 514 Pa. 471, 489–490, 526 A.2d 300, 309 (1987). We find nothing in the prosecutor's closing remarks which would justify the granting of a new trial. As for the prosecutor's suggestion that appellant was not being truthful, this was not a personal opinion offered to the jury, but, rather, was made in the context of an attempt by the prosecutor to highlight the conflicts between appellant's testimony and that of the other witnesses. In such a context, the prosecutor's statement was not improper. As for the use of the word "hit" to describe the shooting, an objection was made which the trial court sustained. The prosecutor withdrew the comment, and the court instructed the jury not to consider it. We find that the trial court's action was sufficient to prevent any prejudice to appellant as a result of this remark. Trial counsel

372

was not ineffective for failing to request further relief in the nature of a mistrial.

The judgment of sentence is affirmed.