**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVON TROY STARR | : | |
| | : | |
| Appellant | : | No. 1424 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 30, 2022
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0000039-2021

BEFORE: BOWES, J., STABILE, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.: **FILED: SEPTEMBER 13, 2023**

Appellant, Devon Troy Starr, appeals from the judgment of sentence imposed in the Court of Common Pleas of Berks County on August 30, 2022, after a jury convicted him of first-degree murder, criminal attempt to commit murder, and related offenses.[1] Appellant contends that the evidence was insufficient to support his convictions and that the verdict was against the weight of the evidence. Following review, we affirm.

Appellant's convictions arise from a shooting that killed Albert Pena-Pena and injured Leo Larios in the City of Reading, Berks County, on the evening of

_____

[1] The jury found Appellant guilty, in his capacity as an accomplice or conspirator, of first-degree murder, 18 Pa.C.S.A. § 2502(a); criminal attempt to commit first-degree murder, 18 Pa.C.SA. §§ 901(a)-2502(a); four counts of aggravated assault, 18 Pa.C.S.A. §§ 2702(a)(1) and 2702(a)(4); and two counts of conspiracy to commit aggravated assault, 18 Pa.C.S.A. § 903.

August 18, 2020. Appellant was arrested and charged in relation to the shooting. The case against Appellant and his co-defendant, Joewel John Keita, proceeded to trial beginning on June 28, 2022 and concluding on July 1, 2022. Following the return of guilty verdicts against both men, the trial court sentenced both to, *inter alia*, life sentences without the possibility of parole for first-degree murder. Appellant filed post-sentence motions, which were denied on September 15, 2022. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant asks this Court to consider two issues:

A. Were the facts on record [*sic*] legally insufficient to support an inference beyond a reasonable doubt that Appellant subjectively intended to promote or facilitate a violent assault on the victims **and** that he objectively committed any overt act, such as aid or attempted aid, in pursuance of that assault?

B. Did Appellant's convictions go against the weight of the evidence, where, *inter alia*, the testimony of the Commonwealth's main witness was so self-contradictory, intuitively and demonstrably mendacious, as to be of nugatory evidentiary weight; the police's inexplicable failure to investigate myriad alternative culprits fatally vitiated their arbitrarily focused case against Appellant; and the verdicts, in view of the three of four paltry and equivocal circumstances on which they were based, were truly shocking to the conscience?

Appellant's Brief at 5 (emphasis in original).

Having reviewed the trial transcript and the evidence admitted at trial, we find the trial court aptly summarized the facts of this case as follows:

On August 18, 2020, Leo Larios and Albert Pena-Pena were in the 1200 block of Church Street in the City of Reading, Berks County, Pennsylvania. As they were loading a speaker into a red

- 2 -

Volkswagen Jetta, Mr. Larios noticed two people walking toward them on Church Street. One person was walking in the street, and the other person was walking on the sidewalk. Mr. Larios described the man on the sidewalk as Black and stocky, testified that he was wearing glasses and a hoodie, and stated that he had a face covering from his nose to his chin. Mr. Larios testified that the person in the street was wearing a hoodie, sweatpants, reflective shoes, and ski mask. Mr. Larios testified that he recognized the man on the sidewalk as Joewel Keita,[2] but that he did not initially tell that to any police officers because he did not want to be labeled as a snitch.

After Mr. Larios and Mr. Pena-Pena finished loading the speaker into the vehicle, Mr. Larios got into the driver's seat and Mr. Pena-Pena got into the passenger's seat. As Mr. Larios was pulling out of the parking space, he heard shots fired from behind them. Mr. Larios was shot twice in the back of the head. Photographs of his injuries were admitted into evidence[.] Mr. Pena-Pena was also shot in the head and died as a result of his injuries.

Mr. Larios testified that he encountered Joewel Keita once or twice on the street and that the two of them had exchanged messages on Facebook. On August 20, 2020, Criminal Investigator Daniel Cedeno of the Reading Police Department presented two photo lineups to Mr. Larios. Mr. Larios testified that he recognized the Appellant, Devon Starr, in the lineup . . . as someone he knew, but that he did not see the Appellant on Church Street on the night of the shooting. Mr. Larios testified that he recognized Joewel Keita in the lineup . . . as the man who walked past him on the sidewalk on the night of the shooting. Mr. Larios testified that he initially told C.I. Cedeno that he was not sure it was Joewel Keita even though he was sure because he did not want to be a snitch.

Mr. Larios testified that he grew up with the Appellant and that he helped him file for Pandemic Unemployment Assistance. Facebook messages that Mr. Larios and the Appellant exchanged were admitted into evidence[.] In the messages, the two men discussed filing for Pandemic Unemployment Assistance, among other things. The Appellant complained multiple times about how

---

[2] Mr. Larios testified that as the man on the street walked by Mr. Larios, the man said, "What's up?" Mr. Larios "recognized" Joewel Keita's unusual "squeaky" voice. Notes of Testimony ("N.T."), Trial, 6/28/22, at 195.

long it was taking for him to get the money, accused Mr. Larios of stealing the money, and threatened Mr. Larios. Mr. Larios testified that the Appellant also threatened him in person at a Turkey Hill prior to the shooting. Mr. Larios testified that the Appellant was the only person he was having problems with at the time of the shooting, and that after the shooting, he did not hear from the Appellant again.

Following the shooting, Criminal Investigator Joseph Snell of the Reading Police Department was dispatched to the hospital where Leo Larios and Albert Pena-Pena were being treated. C.I. Snell looked through the belongings that were collected from the two men. C.I. Snell observed that Leo Larios had a cell phone, a large sum of money,[3] and a wallet with a Social Security card that belonged to Brent Starr, who is the Appellant's brother. C.I. Snell was familiar with Brent Starr and knew that he was incarcerated at the time. C.I. Snell thought that it was unusual that Brent Starr's Social Security card was in the possession of Leo Larios, so he asked C.I. Daniel Cedeno to listen to Brent Starr's telephone calls from the jail.

One of the numbers that Brent Starr called was 610-741-4602, which C.I. Snell subsequently learned was Joewel Keita's cellphone number. The first time Brent Starr called the number was on June 26, 2020, and the last time Brent Starr called the number was on August 21, 2020, which was the date that Joewel Keita was arrested. There were two calls placed on August 19, 2020 that appeared to be related to the shooting that occurred in the 1200 block of Church Street. C.I. Snell seized a cellphone that matched the number 610-741-4602 when he took Joewel Keita into custody.

C.I. Snell obtained video surveillance footage from 1026 Pear Street that was recorded on the night of August 18, 2020.[4] The footage depicts a man wearing a t-shirt with a knit cap rolled up

---

[3] C.I. Snell stated that the money was initially seized as evidence but was later returned to Mr. Larios "[b]ecause he had paystubs to prove that he was working and that was money that he got from employment." N.T., 6/29/22, at 568.

[4] C.I. Snell testified that the Pear Street address is approximately three-quarters of a mile from the scene of the shooting. N.T., 6/30/22, at 646.

on his head whom C.I. Snell identified as the Appellant. The footage also depicts a man wearing a Puma sweatshirt and glasses with a handgun on his right hip whom C.I. Snell identified as Joewel Keita. Still images of the video were admitted into evidence[.]

C.I. Snell also obtained video surveillance that was recorded on the night of August 18, 2020 that showed the same two men walking onto the 1200 block of Church Street.[5] C.I. Snell testified that he interviewed the Appellant in October of 2020 after Appellant had been arrested. The Appellant admitted that he was wearing a ski mask on the night of August 18, 2020 in the 1200 block of Church Street and that he ran back to Pear Street after shots were fired. The Appellant also confirmed the Facebook message that he sent to Leo Larios and admitted that he threatened Mr. Larios in person.

Trial Court Opinion, 12/21/22, at 1-4 (citations to notes of testimony omitted).

In his first issue, Appellant challenges the sufficiency of evidence supporting his convictions. Specifically, he contends that the evidence was insufficient to demonstrate subjective intent to "facilitate a violent assault on the victims" and that he "objectively committed of any overt act" with respect to the assault.

---

[5] Surveillance video obtained from 1239 Church Street showed the individual who was wearing the Puma sweatshirt fire shots at the Volkswagen Jetta before running south on Church Street. It also showed the individual wearing the ski mask run in the same direction after the shots were fired. N.T., 6/29/22, at 388-89, 392-93. Surveillance video and still shots taken from the video obtained from Pear Street depicted the same two individuals leaving from 1026 Pear Street at approximately 10:20 p.m. and returning there at approximately 11:00 p.m. N.T., 6/30/22, at 641-45. The affidavit of probable cause reflects that police responded at 22:54, *i.e.*, 10:54 p.m., to a report of shots fired in the 1200 block of Church Street. Affidavit of Probable Cause, Commonwealth Exhibit 17, p.2., N.T., 6/30/22, at 970.

When reviewing a challenge to the sufficiency of evidence, which presents a question of law, we are guided by the following well-settled standard of review.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

*Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017) (quoting

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014)

(quotations and citations omitted)).

We first note that surveillance footage presented to the jury established that Joewel Keita, not Appellant, fired the shots that injured Larios and killed Pena-Pena. Although Appellant did not fire the shots, he was convicted based

- 6 -

on his role as Keita's accomplice. "An 'accomplice' is an individual who 'knowingly and voluntarily cooperates with or aids another in the commission of a crime.'" *Commonwealth v. Hall*, 867 A.2d 619, 630 (Pa. Super. 2005) (quoting *Commonwealth v. Carey*, 439 A.2d 151, 158 (Pa. Super 1981)). *See also* 18 Pa.C.S.A. § 306(c)(1) ("A person is an accomplice of another person in the commission of an offense if . . . with the intent of promoting or facilitating the commission of the offense, he: (i) solicits such other person to commit it; or (ii) aids or agrees or attempts to aid such other person in planning or committing it[.]").

The fact that Joewel Keita fired the shots and was convicted of first-degree murder and attempted murder does not bar the conviction of Appellant as an accomplice for those crimes or for aggravated assault. "An accomplice is equally criminally liable for the acts of another if he acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense." *Commonwealth v. Schoff*, 911 A.2d 147, 161 (Pa. Super. 2006).

The crimes of which Appellant was convicted included first-degree murder and attempted first-degree murder, aggravated assault, and conspiracy. The trial court began its analysis of Appellant's sufficiency of evidence challenge by providing the statutory definitions for first-degree murder, aggravated assault, and conspiracy.

With respect to first-degree murder, by statute, "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." Trial Court Opinion, 12/21/22, at 8 (quoting 18 Pa.C.S.A. § 2502(a)). "To find a defendant guilty of first-degree murder a jury must find that the Commonwealth has proven that he or she unlawfully killed a human being and did so in an intentional, deliberate and premeditated manner." **Id.** (quoting **Schoff**, 911 A.2d at 159). "The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence." **Id.** (quoting **Schoff**, 911 A.2d at 160). Further, "[s]pecific intent to kill can be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." **Id.** (quoting **Commonwealth v. Montalvo**, 956 A.2d 926, 932 (Pa. 2008), *cert. denied*, 556 U.S. 1186 (2009)).[6]

"A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; [or] (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]" 18 Pa.C.S.A. § 2702(a)(1) and (4). "Because direct evidence of intent is often unavailable, intent to cause serious bodily injury may be shown by the circumstances

---

[6] While it likely goes without saying, the head is a vital part of the body. **See, e.g., Commonwealth v. Mattison**, 82 A.3d 386, 392 (Pa. 2013).

surrounding the attack." ***Commonwealth v. Bruce***, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted). "In determining whether intent was proven from such circumstances, the fact finder is free to conclude 'the accused intended the natural and probable consequences of his actions to result therefrom.'" ***Id.*** (quoting ***Commonwealth v. Rosado***, 684 A.2d 605, 608 (Pa. Super. 1996)).

> Finally, with regard to criminal conspiracy,
>
> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). "Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." ***Schoff***, 911 A.2d at 160 (citation omitted). Further,

> [a]n agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

***Id.*** (citation omitted).

As the trial court appreciated:

> An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

Trial Court Opinion, 12/21/22, at 7 (quoting *Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014) (additional citation omitted)).

Viewing all the evidence admitted at trial in the light most favorable to the verdict winner, we conclude there was sufficient evidence for the jury to find every element of each crime beyond a reasonable doubt. As the trial court cogently observed, "Appellant's threats to Leo Larios, the video surveillance footage, and the fact [Appellant] was present at the scene of the shooting wearing a ski mask in the middle of August, and his admissions to C.I. Snell were all indicative of his guilt." Trial Court Opinion, 12/21/22, at 9. Appellant's sufficiency argument fails.

In his second issue, Appellant argues that the verdicts were against the weight of the evidence. This issue was properly preserved in Appellant's post-sentence motion. *See* Pa.R.Crim.P. 607(A)(3) ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial . . . in a post-sentence motion."). "A motion for new

trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).[7]

As this Court reiterated in *Commonwealth v. Rosser*, 135 A.3d 1077 (Pa. Super. 2016) (*en banc*):

The law pertaining to weight of the evidence is well settled:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Id.* at 1090 (quoting *Commonwealth v Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (citations omitted)).

---

[7] In his brief, Appellant suggests that a weight of evidence argument concedes that "there might have been legally sufficient evidence." Appellant's Brief at 54 (citing *Commonwealth v. Hunter*, 768 A.2d 1136, 1143 (Pa. Super. 2001)). However, *Hunter* does not suggest that there **might have been** sufficient evidence. In fact, Hunter quotes the above language from *Widmer* stating that a weight challenge concedes that there **is** sufficient evidence to sustain a conviction.

The thrust of Appellant's weight challenge relates to the credibility of Mr. Larios and to what Appellant considers the "slipshod nature" of the investigation. However, as this Court has recognized:

> "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and quotation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. ***Talbert***, ***supra***.
>
> Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the lower court; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. ***See id.***
>
> > Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> ***Id.*** at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Id.*** (quotation marks and quotation omitted).

***Commonwealth v. Spence***, 290 A.3d 301, 311 (Pa. Super. 2023) (alterations in original).

- 12 -

With respect to both the credibility of Mr. Larios and the investigation conducted following the shooting, counsel—and especially counsel for Appellant's co-defendant—conducted a thorough and effective cross-examination of the Commonwealth's witnesses, challenging not only the credibility of Mr. Larios but also the criminal investigators' purported failure to consider other "culprits," collect evidence, and order DNA testing on cigarette butts and other items observed near the scene of the shooting. Nevertheless, the trial court rejected Appellant's weight of the evidence challenge and concluded that

> while no eyewitness placed the Appellant at the scene of the shooting, the evidence [as summarized in the court's analysis of the sufficiency of evidence issue], including the Appellant's admission, was more than enough for the jury to conclude that the Appellant was guilty of crimes that were charged. There was nothing shocking about the jury's verdict.

Trial Court Opinion, 12/21/22, at 10.

We find that the trial court did not abuse its discretion by rejecting Appellant's weight of the evidence claim. Because the verdict was not "so contrary to the evidence as to shock one's sense of justice," we shall not disturb the court's ruling.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2023